[No. 50960–3.   En Banc.   December 12, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD
LEE BERGERON, *Petitioner.*

*Jonathan S. Cole* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Cindy K. Smith, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This case is before us on discretionary review. The defendant, Richard L. Bergeron, appealed his juvenile court conviction of the crime of attempted burglary in the second degree. The Court of Appeals affirmed.[1] We also affirm.

The findings and conclusions entered by the juvenile court summarize the facts and that court's resolution of the case:

## FINDINGS OF FACT

### I.

On or about April 17, 1983 Officer Shaw of the King County Department of Public Safety contacted [the victim] at [her residence in] Seattle. The contact was in regards to a report of a prowler. [The victim] heard a

---

[1]*State v. Bergeron*, 38 Wn. App. 416, 419, 685 P.2d 648 (1984).

tremendous crash in their [*sic*] basement at 3:15 a.m. and when Officer Shaw arrived at [the victim's] home he discovered a broken window in the basement that had been opened. No basement windows were broken in [the victim's] home prior to 3:15 a.m. on April 17, 1983, and [the victim] gave no one permission to enter her house or break her window.

II.

Officer Wardstrom arrived with a police dog to track the person who broke [the victim's] window. The dog ultimately found the respondent [Bergeron]. Officer Wardstrom is trained in dog tracking and is qualified to determine when a dog is on someone's track, and Sarge, Officer Wardstrom's police dog has been successfully trained in tracking. Sarge is the dog that tracked the respondent.

III.

Officer Shaw advised the respondent of his constitutional rights per Miranda. The respondent understood his constitutional rights and he waived his constitutional rights. The respondent gave a written statement indicating he was cutting through the back yards of homes in the vicinity of Evergreen High School, and while traveling north from 10th S.W. and S.W. 114th he stopped at a two–story house in the middle of the block. He went to the north side of the two–story house and threw a rock through the basement window and slid it open. He was going to go into the house but he took off, and was later caught by a police dog.

IV.

All of the above–stated facts occurred in King County, Washington; from the foregoing findings of fact, the court now makes the following:

CONCLUSIONS OF LAW

I.

The above–entitled court has jurisdiction over the subject matter and of the respondent Richard Lee Bergeron, in the above–entitled cause.

II.

The respondent Richard Lee Bergeron, on or about April 17, 1983, did attempt to enter and remain unlawfully in a building other than a vehicle.

III.

The respondent did so *with intent to commit a crime therein.*

IV.

These acts occurred in King County, Washington.

V.

The respondent is guilty of attempted burglary in the second degree.

(Italics ours.)

Two principal issues are presented.

ISSUES

ISSUE ONE. Is the intent to commit a specific crime inside the burglarized premises an "element" of the crime of burglary?

ISSUE Two. Where the specific crime intended to be committed inside burglarized premises is for some reason material to the theory of the case of a defendant charged with the burglary, may the State be required to specify what specific crime was intended therein?

DECISION

ISSUE ONE.

CONCLUSION. The intent to commit a specific named crime inside the burglarized premises is not an "element" of the crime of burglary in the State of Washington. It is true that burglary has common law antecedents to the contrary, but modernly in this state burglary is a statutory offense. The intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises. To the extent that *State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983) holds to the contrary, it is hereby overruled.

The juvenile was charged with an anticipatory offense, namely, an "attempt", not with having actually committed burglary. However, in attempt cases "a defendant must be charged with an attempt to commit a specifically designated crime, and it is to that crime one must look in iden-

tifying the kind of intent required."[2]

"At common law, the crime of burglary consisted of a (1) breaking and (2) entering of (3) a dwelling house (4) of another (5) in the nighttime (6) with the intent to commit a felony therein."[3] As Professors LaFave and Scott further point out in their criminal law hornbook, however, "[a]cross the intervening centuries these elements have been expanded or discarded to such an extent that the modern-day offense commonly known as burglary bears little relation to its common–law ancestor."[4]

The result is that modernly the crime of burglary is a statutory offense which has scant in common with its common law antecedents.[5] Furthermore, each state has its own statutory version of the offense so the elements of the crime of burglary vary substantially from state to state.[6]

Even within a given state, legislatures over the years have from time to time changed the elements of the offense of burglary. In this state, for example, there have been a number of such changes,[7] the most notable of which were the major changes made in 1975 when the Legislature adopted a new criminal code.[8] Now, a person commits the crime of burglary in the second degree when he or she enters or remains unlawfully in a building with intent to

---

[2](Footnote omitted.) W. LaFave & A. Scott, *Criminal Law* § 59, at 429 (1972); RCW 9A.28.020. *See State v. Davis,* 27 Wn. App. 498, 506, 618 P.2d 1034 (1980).

[3]W. LaFave § 96, at 708. *Accord,* F. Inbau, J. Thompson & J. Zagel, *Criminal Law and Its Administration* 408 (3d ed. 1980).

[4]W. LaFave, at 708.

[5]W. LaFave, at 715; Inbau, at 411.

[6]W. LaFave, at 709–15; Inbau, at 411.

[7]*See* Laws of 1975, 1st Ex. Sess., ch. 260, p. 839–40; Laws of 1909, ch. 249, §§ 326–28, p. 989; Code of 1881, §§ 827, 828, at 166; Laws of 1873, Criminal Practice Act, §§ 48, 49, p. 190.

[8]Laws of 1975, 1st Ex. Sess., ch. 260, p. 839.

commit a crime against a person or property therein.[9] Change this to the building being a dwelling, and the burglar being armed or committing an assault in the dwelling, and the crime becomes burglary in the first degree.[10] Now, the crime of burglary in the State of Washington is almost entirely different from what it was at common law[11] and is substantially different from what it was under our early burglary statutes.[12]

As set out in the findings and conclusions, the juvenile court found and concluded that the defendant *attempted to unlawfully enter a building and did so "with intent to commit a crime therein"*. This tracks the language of the burglary in the second degree statute and of the information charging the offense.

The defendant argues that since this court's recent decision in *Johnson,* the particular crime which the defendant intended to commit inside the building or dwelling is an element of the crime of burglary, and that such crime must be specifically charged, instructed on (in a jury trial) and found as a fact (in a trial to the court). He argues that since this was not done here, the information did not charge a crime, and the findings and conclusions do not establish that a crime has been committed and the charge must be dismissed. We disagree.

By way of background to our discussion of *Johnson,* it is helpful to refer to the first burglary case decided by this court. That was in 1890, the first year of our State Supreme Court. Interestingly, although the burglary statutes were different then, the issue in that case was the same as the issue in this case. That early burglary case was *Linbeck v.*

---

[9] RCW 9A.52.030; WPIC 60.03, 11 Wash. Prac. 302 (1977).

[10] RCW 9A.52.020; WPIC 60.01, 11 Wash. Prac. 299 (1977).

[11] See footnote 2.

[12] *See* Laws of 1909, ch. 249, §§ 326–28, p. 989; Code of 1881, §§ 827, 828, p. 166; Laws of 1873, Criminal Practice Act, §§ 48, 49, p. 190.

*State,* 1 Wash. 336, 337–38, 25 P. 452 (1890), and on this issue the court held:

The first ground of reversal relied upon is, that the information does not state facts constituting a public offense. The contention in this regard being, that it is not only necessary to charge that the entering was with an intent to commit a misdemeanor, but that the particular misdemeanor which he intended to commit must be set out. This contention is borne out by numerous authorities which the diligence of counsel has gathered for the information of this court; and we believe it to be the law in most of the states, and that it would clearly be the law here were it not for § 828 of our code. Said section is as follows: "Sec. 828. Every person who shall be guilty of any such unlawful entry or unlawful breaking and entry as described in the next preceding section, shall be deemed to have made such entry or breaking and entry with intent to commit a misdemeanor or a felony, unless such entry or breaking and entry shall be explained by testimony satisfactory to the jury trying the case to have been made for some purpose without criminal intent;" and by virtue of its provisions the prosecution is no longer compelled to prove with what intent the defendant enters, but on the contrary, the unlawful entering having been proved, the intent to commit a crime or misdemeanor is presumed; and this being so, we are unable to see how the accuracy required before such section was enacted can now aid the defendant. The burden of showing the intent with which he entered is, by said section, cast upon him, and he can show such an intent to have been an innocent one as well without the details as to his specific intent as with it. Aided by the section above quoted the information was sufficient.

Aided by the then presumption of criminal intent in burglary cases statute, the court in that early case thus held that it was not necessary to charge the specific crime intended to be committed in the burglarized premises. Thereafter, for over nine decades the law of this state was settled—in burglary cases neither the information, jury instructions nor findings and conclusions were required to

designate the specific crime intended.[13]

Then recently in *Johnson,* a divided court held that in a burglary case the specific crime intended to be committed in the premises must be both alleged in the information and included in the instructions as an element of the offense. Depending on how the majority opinion is read, it either strongly indicated or else held outright that such intent is an element of the offense. As we now read that opinion, the majority's holding in this regard is primarily premised on: (1) the authority of *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983); and (2) the replacement by the Legislature in 1975 of the *presumption* of criminal intent in burglary cases statute[14] with an *inference* of criminal intent in burglary cases statute.[15]

We reconsider the principles announced in *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983); and we reject these two premises as justifying the conclusion reached in *Johnson* that the specific crime intended is an "element" of the crime of burglary. We are obligated to do this because that rule is demonstrably of serious consequence to the administration of this State's criminal justice system and we believe the correct rule of law to be other than as stated in *Johnson.*

The following are some of the consequences and potential consequences of the *Johnson* holding.

Burglary continues to be one of the most prevalent crimes which contemporary society must face. We know that last year (1984) there were 73,499 burglaries and attempted burglaries in this state, a total which is up 6.2

---

[13]*See State v. Murie,* 140 Wash. 71, 75, 248 P. 79 (1926); *State v. Lewis,* 42 Wash. 672, 673–74, 85 P. 668 (1906); *State v. Wilson,* 9 Wash. 218, 219–20, 37 P. 424 (1894); *Bayless v. United States,* 381 F.2d 67, 76 (9th Cir. 1967).

[14]Former RCW 9.19.030.

[15]Laws of 1975, 1st Ex. Sess., ch. 260, p. 840; RCW 9A.52.040.

percent from the total of the year before.[16] Before *Johnson* overturned over 90 years of legal precedent to the contrary, the pattern jury instructions prepared by the Washington State Supreme Court Committee on Jury Instructions, and used in the criminal trial practice, did not include a requirement that there be proof of an intent to commit a specific named crime as an element of burglary but required only that there be proof of an "intent to commit a crime against a person or property therein".[17] *Johnson* either held or strongly suggested that this is constitutional error which may be raised at any time and may be raised without regard to whether it was ever raised in the trial court.[18] Thus, according to the principle enunciated in *Johnson*, all convictions at trial of the crime of burglary subsequent to the 1975 legislative changes to the burglary statutes are subject to being vacated at personal restraint proceedings[19] because a necessary element of the offense was not proved.[20] The only exceptions would be those cases tried subsequent to *Johnson* (which was decided in December of 1983) that did not use the pattern instructions and which contained instructions or findings on the specific crime intended—or where after a review of the complete transcript of the trial it could be established that under the facts of the particular case the error was constitutionally harmless.

Another consequence is that despite the fact that 5,755 attempted burglaries occurred in this state last year

---

[16]Washington State Uniform Crime Reporting Program, *Crime in Washington State*, 1984 Ann. Rep., at i.

[17]WPIC 60.02–60.04.

[18]*State v. Johnson*, 100 Wn.2d 607, 614, 674 P.2d 145 (1983).

[19]*See* RAP 16.4(c)(2).

[20]*See State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984); *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953).

(1984),[21] the crime of attempted burglary would have to be virtually written off the books as a crime. Except in the case where a burglary defendant or an accomplice confesses, how can the State be reasonably expected to prove *beyond a reasonable doubt* what specific crime or crimes were intended to be committed inside a building when entry is attempted but not gained?

While we do not base our decision on crime statistics, we will not close our eyes to the facts of life when considering the ramifications of changes wrought by this court in the established law of our state.

Furthermore, the holding in *Johnson* could also cast doubt on cases wherein post–1975 burglary convictions were used as a basis for habitual criminal proceedings and impeachment of witnesses, and where burglary was used as an aggravating circumstance in aggravated murder cases.[22] The same is true where post–1975 burglary convictions are used in sentencing proceedings leading to the imposition of capital punishment.[23]

The consequences and potential consequences of the *Johnson* decision are sufficiently formidable to require our reexamination of its basis.

Another very practical consequence of imparting this new element into the crime of burglary exists. It was foreseen by Justice Rosellini who, in writing for the dissenting Justices in *Johnson*, sounded this cautionary note:

> Knowledge of criminal intent usually resides exclusively in the mind of the defendant. He may unlawfully enter a building with the intent to commit a certain crime, and ultimately commit a different crime, or no crime at all. He is nonetheless guilty of burglary.

---

[21]*Crime in Washington State,* at 28.

[22]*See* RCW 10.95.020(2), (3), (7), (9)(c).

[23]*See State v. Bartholomew,* 98 Wn.2d 173, 195–97, 654 P.2d 1170 (1982), *State's cert. granted,* 463 U.S. 1203, 77 L. Ed. 2d 1383, 103 S. Ct. 3530, *defendant's cert. denied,* 463 U.S. 1212, 77 L. Ed. 2d 1395, 103 S. Ct. 3548 (1983) (*Bartholomew* I).

In either case, the State would be hard pressed to prove entry with intent to commit a crime if it were required to specify exactly which of several crimes available to the defendant he intended to commit. Such a requirement would seriously weaken the enforcement of burglary laws.[24]

Our facts present a consummate example of the reason for Justice Rosellini's concern. The defendant, at 3:15 on an April morning, was wearing leather gloves and a ski parka with hood. He broke out a basement window in an occupied residence, opened it and pushed it inward and off its track. Upon the prompt arrival of the police, the defendant fled and hid under a parked vehicle. After he was found by a skilled tracking dog and ordered out by a police officer, who identified himself as an officer, he again ran, again hid and had to again be pursued, captured and subdued. The defendant admitted he had intended to enter the home through the broken window.

Our standard of review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *beyond a reasonable doubt*.[25] Unmistakably, the defendant intended more than a social call. Applying our standard of review to the facts, we conclude that the juvenile court, on the evidence before it, had every right to determine, as it did, that the defendant attempted to enter the home "with intent to commit a crime therein". On the other hand, there is absolutely no evidence in the record to prove what specific crime it was the defendant intended to commit inside. Although urged by defense counsel to enter such a finding, the juvenile court declined to do so. Obviously, the juvenile court judge felt that there was no evidence on which to base such a finding. In any event, under the sufficiency test

---

[24]*Johnson*, at 632–33 (Rosellini, J., dissenting) (quoting with approval from *State v. Chelly*, 32 Wn. App. 916, 651 P.2d 759 (1982)).

[25]*State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

enunciated above we could not have sustained such a finding without indulging in legal fiction, and this we decline to do.

The fact the defendant wore gloves on that April morning, and perhaps a concealing hood, is evidence that is every bit as compatible with his having intended to rape the female occupant of the home as it is with his having intended to commit larceny, robbery, murder, assault or arson. To determine which one or more of these crimes was in the defendant's mind when he broke out the window to enter the home would require the sheerest speculation. The fact that courts may be found in other jurisdictions that may be willing to so speculate does not convince us that we should do the same.

Where jury trials are concerned, some rhetorical questions are appropriate to underscore another facet of the problem. Had this been a jury trial, instead of a trial to the court, what intended crime would the trial court have been expected to instruct the jury on?; or, would the trial court in these circumstances have had to instruct on all of the elements of all of those crimes?; or, would it, perhaps, instruct on none of them and simply throw out the case? And if the trial court in a jury case did instruct at length on the definitions and elements of all possible crimes, any one of which might have been in the defendant's mind at the time he attempted to enter, could this reasonably be expected to assist a jury questing for guidance on the law to enable it to reach a just and proper verdict?; or, would such a plethora of instructions on all possible crimes simply result in visiting total confusion upon an otherwise uncomplicated case?

With this in mind, we turn to our analysis of the two major premises on which *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983) was decided.

As to the first premise, the *Johnson* majority stated that "[w]e also hold, in light of our recent decision in *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), that in a burglary prosecution the information must specify and the instruc-

tions must specify and define the crime or crimes the defendant allegedly intended to commit."[26]

In referring to *Bonds,* we observe that the jury was there instructed that in order to convict the defendant of first degree rape, it was necessary to find that he had either inflicted serious injury or had unlawfully entered the building where the victim was with intent to commit a crime against a person or property therein.[27] The majority opinion in *Bonds* held that the instruction was defective as to the unlawful entry alternative because "[o]ne might speculate that the crime was probably one of murder, assault, or robbery, but the instructions did not limit the jury to these."[28] Significantly, the court in *Bonds* held as it did without citing any burglary cases as authority therefor, and without referring to this state's 90 plus years of unbroken legal precedent holding that in burglary cases the specific crime intended to be committed inside burglarized premises need *not* be alleged or proved. Thus, we are not persuaded that *Bonds* should be considered as controlling precedent in this regard.

*Johnson's* second major premise was that the 1975 repeal of the former *presumption* of criminal intent in burglary cases statute,[29] and its replacement by an *inference* of criminal intent in burglary cases statute,[30] removed the

---

[26]*Johnson,* at 610.

[27]*State v. Bonds,* 98 Wn.2d 1, 17, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983).

[28]*Bonds,* at 18.

[29] "Presumption of intent.
"Every person who shall unlawfully break and enter or unlawfully enter any building or structure enumerated in sections 326 and 327 of this act shall be deemed to have broken and entered or entered the same with intent to commit a crime therein, unless such unlawful breaking and entering or unlawful entry shall be explained by testimony satisfactory to the jury to have been made without criminal intent." Laws of 1909, ch. 249, § 328 (*see* former RCW 9.19.030).

[30]"INFERENCE OF INTENT. In any prosecution for burglary, any person who

basis for the rule that the State need neither charge nor prove what crime a defendant charged with burglary intended to commit.[31] This statutory change was made by the Legislature after it had become abundantly clear that courts were beginning to look more critically at the use of presumptions in criminal cases.[32] While the *Johnson* conclusion might have logically followed the statutory change had such change occurred in the 1890's, it did not logically follow when it occurred in 1975 nor does it today. This is because, as above discussed, the State Legislature has drastically changed the nature of the crime of burglary in this state to the point where it has become a different offense today than it was under either the common law or under our burglary statutes in 1890.

In 1890, the courts were still operating under the strong influence of the common law definition of burglary. As also discussed above, one of the elements of common law burglary was that the breaking and entering be "with the intent to commit a felony" therein. This is reflected by the opinion of one of the Justices in *Linbeck v. State,* 1 Wash. 336, 340, 25 P. 452 (1890) (Anders, C.J., concurring) who observed that "[a]t common law no indictment for burglary was sufficient which failed to state the facts necessary to show the particular felony intended to be committed, . . ." Thus, at common law, the indictment obviously had to plead facts showing a felony was intended because if anything other than a felony was intended the breaking and

---

enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent." Laws of 1975, 1st Ex. Sess., ch. 260, p. 840; RCW 9A.52.040.

[31]*Johnson,* at 622.

[32]*See State v. Deiro,* 20 Wn. App. 637, 639, 581 P.2d 1079 (1978); Washington State Crim. Just. Training Comm'n, *Revised Criminal Code Training and Seminar Manual,* Commentary at 9A.52.040–1 (compiled and edited by G. Golob & G. Mooney 1976).

entering did not constitute burglary. So it is that those states with burglary statutes which still require an intent to commit a felony, or intent to commit a felony or larceny, or intent to commit other designated crimes,[33] can logically require that a specific intended crime be alleged and proved. There is no similar reason to require it in the State of Washington where burglary is a statutory offense and where our burglary statutes require only an intent to commit any crime.

We are fully cognizant that "[t]he common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state." RCW 4.04.010.

> But where, as here, a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law.[34]

Thus, reading the element of intent to commit a particular crime into the statutory offense of burglary which does not contain that element can no more be justified on the basis of the common law than could the reading in of any of the other elements of common law burglary as, for example, the common law element of "breaking" which also is no longer required by our burglary statutes.

One final point. The specific crime intended to be committed in the burglarized premises is not an element of burglary in the important sense that the information is defective if the element is not alleged in the information. We recently acknowledged in *State v. Holt,* 104 Wn.2d 315, 320, 704 P.2d 1189 (1985) that "the information in *Johnson* was not defective because it did state every *statutory element* of burglary." Similarly, we see no reason why jury

---

[33]*See* F. Inbau, J. Thompson & J. Zagel, *Criminal Law and Its Administration* 411 (3d ed. 1980).

[34]*State ex rel. Madden v. PUD 1,* 83 Wn.2d 219, 222, 517 P.2d 585 (1973).

instructions, findings of fact and conclusions of law should be considered defective when they state every *statutory element* of burglary.

■ For good and sufficient reasons, therefore, we now hold that the specific crime or crimes intended to be committed inside burglarized premises is *not* an element of burglary that must be included in the information, jury instructions or in the trial court's findings and conclusions. It is sufficient if the jury is instructed (or that the court find and conclude, as it did in the present case) in the language of the burglary statutes.[35]

So far as *Johnson*'s discussion of the constitutional aspects of the matter are concerned, due process does, of course, require that every fact necessary to constitute a crime charged be proved beyond a reasonable doubt.[36] Under our burglary statutes, the intent to commit a crime against a person or property in the burglarized premises is such a fact;[37] and that fact, having been proved in this case, the defendant's right to due process was fully accorded him. There was no violation of either the state constitution or federal constitution.

If this opinion is unduly prolix, it is undoubtedly due in part to the importance the majority of the court attaches to explaining in some detail to the criminal bar why we perceive it to be necessary to overrule a legal principle but recently adopted by this court.

To sum up. A study of the history and evolution of the law of burglary convinces us that modernly burglary in the State of Washington is a statutory crime, and the intent required to be proved is simply the "intent to commit a

---

[35]RCW 9A.52.020–.030.

[36]*Sandstrom v. Montana*, 442 U.S. 510, 520, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979); *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. McHenry*, 88 Wn.2d 211, 214, 558 P.2d 188 (1977).

[37]*See Sandstrom*, at 520–22; *United States v. United States Gypsum Co.*, 438 U.S. 422, 435, 57 L. Ed. 2d 854, 98 S. Ct. 2864 (1978).

crime against a person or property therein". In view of this eminently clear statutory requirement, to now require proof that the intent to commit some specific crime is now an element of the offense is to unjustifiably impose vestigial remnants of former common law pleading practices on the present day practice of criminal law. For the reasons detailed herein, including the potential upsetting of past burglary convictions, the consequences of unnecessarily imposing that view could cause serious consequences to the orderly administration of this state's criminal justice system. Were it clear that under the law it was necessary to impose those potential consequences on the criminal justice system in order to secure justice to the accused, we would do so, but it is not. In those few cases where the specific crime intended by the alleged burglar is material to the defendant's theory of the case, the court may compel the State to so specify in a bill of particulars; but for the reasons set out herein it was unwarranted for this court to decree that such intent is an element of the offense, constitutionally impose it in burglary cases past and future, and thereby upset this state's established law of burglary.

Issue Two.

Conclusion. Where an information charging burglary is substantially good but does not specify the nature and extent of the crime with sufficient exactness to enable the accused to properly defend, as where the crime intended to be committed in the allegedly burglarized premises is shown by the accused to be material to the defense of the case, the State may be required to furnish a bill of particulars.

█ In what could perhaps be said to be a third premise of *State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983), it referred to the possibility that absent specification of the crime intended, the jury might involve itself in "unguided speculation" as to what crime the defendant may have intended to commit, and perhaps mistakenly consider

something to be a crime that is not a crime.[38]

While we share this concern, we do not view it as a problem. In the first place, our experience is that the usual burglary defense is "I didn't do it", and the specific crime intended to be committed in the burglarized premises is either obvious or for some other reason is often not a genuine issue in the case.

There are, of course, some cases where the specific crime intended may be material to the defendant's theory of the case as, for example, where a defendant claims to have entered and/or remained in the premises for some lawful purpose, such as at the owner's invitation or to reclaim the defendant's own property. In such cases, the time–honored way of proceeding is for defense counsel to file a motion for a bill of particulars, make the requisite showing, and obtain an order requiring the prosecuting attorney to specify the crime intended by way of a bill of particulars,[39] and to then propose instructions on the subject which will permit the defendant to argue his or her theory of the case in that regard.[40]

An accused has a constitutional right to be informed of the nature and cause of the accusation against him or her so as to enable the accused to prepare a defense.[41] Where an information does not allege the nature and extent of the crime with which the defendant is accused, so as to enable the defendant to properly prepare his or her defense, a bill of particulars is appropriate[42] and is specifically authorized

---

[38]*Johnson,* at 624.

[39]CrR 2.1(e); JCrR 2.04(b).

[40]*State v. Safford,* 24 Wn. App. 783, 790, 604 P.2d 980 (1979).

[41]U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10).

[42]*State v. Holt,* 104 Wn.2d 315, 320–21, 704 P.2d 1189 (1985). *See* 1 C. Wright, *Federal Practice* § 129 (2d ed. 1982); 8 J. Moore, *Federal Practice* ¶ 7.06 (2d ed. 1985).

by our court rules.[43]

Two final matters remain.

It should be made clear that we do not overrule *Johnson* in toto. As we read *Johnson,* it appears to approve the pattern inference of intent instruction, WPIC 60.05,[44] providing the bracketed phrase in that instruction (see footnote 44) is only used when the defendant presents evidence on that issue in the defendant's own case.[45] The pattern inference of intent instruction had not been given in *Johnson* and was not the instruction there held to be erroneous. Nothing herein is intended to indicate other than that we fully approve the pattern inference of intent jury instruction in burglary cases. Either that instruction or the pattern circumstantial evidence instruction (WPIC 5.01) may appropriately be given as the trial court considers most helpful to the jury under the facts of the particular case.

■ We do not have recourse to the inference of intent in burglary cases statute (RCW 9A.52.040) in this case, however, because the defendant neither entered nor remained in the house.[46] In any event, it is unnecessary here. As held by the Court of Appeals when this case was before that court:

Intent may be inferred from all the facts and circumstances surrounding the commission of an act or acts.

---

[43]CrR 2.1(e); JCrR 2.04(b).

[44]"A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein [unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent]. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given." WPIC 60.05, 11 Wash. Prac., at 104 (Supp. 1982).

See RCW 9A.52.040; *State v. Bishop,* 90 Wn.2d 185, 187–90, 580 P.2d 259 (1978); *State v. Durning,* 71 Wn.2d 675, 677, 430 P.2d 546 (1967); *State v. Deiro,* 20 Wn. App. 637, 639–40, 581 P.2d 1079 (1978); *State v. Hebert,* 20 Wn. App. 656, 657–58, 581 P.2d 1084 (1978).

[45]*Johnson,* at 619.

[46]*State v. Ogden,* 21 Wn. App. 44, 49, 584 P.2d 957 (1978), *review denied,* 91 Wn.2d 1013 (1979).

*State v. Lewis,* 69 Wn.2d 120, 123, 417 P.2d 618 (1966), citing *State v. Willis,* 67 Wn.2d 681, 685, 409 P.2d 669 (1966). This rule is applicable in cases of attempted crimes as well as in cases where the crime has been consummated. *State v. Lewis, supra* at 123, citing *State v. Leach,* 36 Wn.2d 641, 646, 219 P.2d 972 (1950). Although intent may not be inferred from conduct that is patently equivocal, it may be inferred from conduct that plainly indicates such intent as a matter of logical probability. *State v. Lewis, supra* at 124.

Mr. Bergeron's conduct was not patently equivocal; it plainly indicated his criminal intent as a matter of logical probability.[47]

We agree. The evidence was sufficient to prove that the defendant had an intent to commit some crime against a person or property within the dwelling and to sustain his conviction.

The defendant also argues that the juvenile court erred in entering written findings of fact and conclusions of law after he had taken his appeal. That was not error.[48]

Affirmed.

BRACHTENBACH, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—Two years ago this court decided that the State, in a burglary prosecution, must prove the specific crime a defendant intended against a person or property in the premises he entered or remained in unlawfully. *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983). This case was, in turn, based upon *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). We so ruled in light of recent United States Supreme Court decisions requiring a state to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Johnson,* at 614; *see In re Winship,* 397

---

[47]*State v. Bergeron,* 38 Wn. App. 416, 419, 685 P.2d 648 (1984).

[48]*State v. Commodore,* 38 Wn. App. 244, 249–50, 684 P.2d 1364 (1984).

U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *Sandstrom v. Montana*, 442 U.S. 510, 520, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

Although I share the concern of the majority that dwellings be safe from burglars, I must dissent from this majority opinion abandoning what our court found was a constitutional mandate. I would reverse and remand for entry of additional findings consistent with the rule articulated in *Johnson.*

The majority set forth two separate explanations why it is proper to overrule *Johnson.* Upon examination, the two explanations conflict with each other. On the one hand, the majority rejects *Johnson* reasoning that burglary is a statutory offense, changed by the Legislature over the years, which no longer retains the common law requirement that the State prove what crime was intended. On the other hand, the majority asserts that *Johnson* improperly rejects 90 years of court precedent not requiring the State to prove the crime intended. At first glance, these explanations support the majority position. The 90 years of precedent, however, developed from case law which is no longer constitutionally sound. The same constitutional developments which undermine *Linbeck v. State*, 1 Wash. 336, 337–38, 25 P. 452 (1890) and its progeny precipitated a legislative amendment in 1975 removing from the criminal code the invalid mandatory presumption rejected by the reasoning of the United States Supreme Court in *Sandstrom* and relied on in *Linbeck.*

Over the same 90 years, the burglary statute itself remained the same. Interpreting the burglary statute, the *Linbeck* majority recognized the specific crime intended is an element of burglary in most states and "would clearly be the law here were it not for § 828 of our code." *Linbeck,* at 338. That element of the crime did not magically disappear over the course of years; when the Legislature repealed the presumption statute that element remained for the State to prove beyond a reasonable doubt.

## I

As the majority points out, the issue decided in *Linbeck* is nearly the same as that before us, "[t]he contention . . . being, that it is not only necessary to charge that the entering was with an intent to commit a misdemeanor, but that the particular misdemeanor which he intended to commit must be set out." *Linbeck,* at 337. The *Linbeck* majority recognized that the specific crime intended is an element of burglary in most states and "would clearly be the law here were it not for § 828 of our code." Instead, *Linbeck* continued, "[t]he burden of showing the intent with which he [the accused] entered is, by said section, cast upon him . . ." *Linbeck,* at 338. The *Linbeck* dissent correctly explained that Code of 1881, § 828 overrides the presumption of innocence. *Linbeck,* at 340 (Anders, C.J., dissenting).

Under modern case law, the *Linbeck* interpretation of the presumption statute would be unconstitutional. "A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. . . . [T]his presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." *Morissette v. United States,* 342 U.S. 246, 275, 96 L. Ed. 288, 72 S. Ct. 240 (1952). Mandatory presumption instructions also violate due process. *Sandstrom v. Montana,* 442 U.S. at 520.

Because the *Linbeck* rule is invalid under modern federal constitutional law, the majority's reliance on it cannot support rejection of *Johnson.*

## II

Even if the specific crime intended were not a recognized element of burglary subsequent to *Linbeck,* this court would be required to interpret the statute to include intent to commit a specific crime as an element.

A mere averment that the accused has entered a building

for the purpose of committing a "crime" fails wholly to inform a person of the specific offense it is claimed was intended. When a statute does not define the crime with sufficient certainty to apprise the defendant of the nature of the accusation against him, to the end that he may prepare his defense and plead the judgment as bar to any subsequent prosecution for the same offense, it is insufficient to charge in the language of the statute. *State v. Royse,* 66 Wn.2d 552, 403 P.2d 838 (1965); *accord, Russell v. United States,* 369 U.S. 749, 765, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962).

### III

It is also necessary to address the "serious consequences" to law enforcement predicted by the majority. One concern the majority raises is that the State will meet great difficulty in attempting to prove beyond a reasonable doubt the intent of someone who has merely attempted a burglary to commit a specific crime in the premises he intended to illegally enter. We examined this contention in *Johnson* and indicated why we believed the State can usually surmount this alleged difficulty.

> In the first place, relatively few burglaries take place without at least some step indicating the nature of the crime intended, such as entry into the assault victim's bedroom or the attempted removal of property. Absent any such evidence, moreover, the State is justified in alleging, and the jury justified in inferring, an intent to commit theft, that being the most usual motive for burglary. *United States v. Thomas,* 444 F.2d 919, 924 (D.C. Cir. 1971) . . .

*Johnson,* at 625. Furthermore, *Johnson* does not require that the jury agree as to which particular crime was intended so long as each juror agrees that the defendant intended to commit one of the crimes specified and upon which the jury was instructed.

If the majority believes its holding today can impact the burglaries and attempted burglaries committed since *Johnson,* it is surely mistaken. Where a court overrules a prior

decision so as to enlarge the scope of criminal liability, due process and the prohibition against ex post facto laws require the new rule must be applied prospectively only. *United States v. Goodheim,* 651 F.2d 1294 (9th Cir. 1981); *United States v. Potts,* 528 F.2d 883 (9th Cir. 1975); *see Bouie v. Columbia,* 378 U.S. 347, 353–54, 12 L. Ed. 2d 894, 84 S. Ct. 1697 (1964).

The majority opinion relies on outdated case law and fails to recognize recent constitutional developments and the supporting federal case law to go out of its way to overrule a decision less than 2 years old. I believe we must reverse and remand for entry of proper findings.

DOLLIVER, C.J., and PEARSON, J., concur with UTTER, J.