# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70325-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN CARLOS AGUAYO | ) | |
| a/k/a JUAN AGUAYO RAMIREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 27, 2014 |
| | ) | |

PER CURIAM — Juan Aguayo-Ramirez challenges the sufficiency of the evidence

supporting his convictions for two counts of second degree identity theft. He contends

the State failed to prove beyond a reasonable doubt that he possessed the driver's

licenses and checkbook of the victims with the intent to commit or assist the

commission of a crime. We agree and reverse.

On December 5, 2012, King County Sheriff's Deputy Michael McDonald stopped

Aguayo-Ramirez for running a red light. He then arrested Aguayo-Ramirez for

outstanding matters and performed a search incident to arrest.[1] He found California

driver's licenses belonging to Gary Stille and Frederick Sombrano, a checkbook bearing

both of their names, a calling card, a sim card, some coins, and a .22 caliber bullet in

Aguayo-Ramirez's pockets. The State charged Aguayo-Ramirez with three counts of

_____

[1] The jury did not hear the evidence about the reason for the arrest.

identity theft in the second degree -- one count for each driver's license and one for the checkbook.

At trial, Deputy McDonald testified that Aguayo-Ramirez acted "[v]ery nervous" during the stop. He acknowledged, however, that it is "typical for someone to be nervous" when they are stopped by law enforcement.

When Deputy McDonald asked Aguayo-Ramirez about the licenses and checkbook, he said "they belong to friends of mine." Deputy McDonald testified that the licenses were hole-punched, and that, in Washington State, a hole-punched driver's license is "either no longer valid . . . or just can't be used." He also testified that the checkbook was for a bank account that was no longer valid.

Stille and Sombrano testified that they did not know Aguayo-Ramirez or give him permission to possess the items found in the search. Sombrano testified that the licenses, checkbook, sim card and coins were in a backpack that was stolen from his car in October 2012. Stille and Sombrano testified that, to their knowledge, no one had used their licenses or checkbook in a fraudulent manner. The defense called no witnesses. The jury found Aguayo-Ramirez guilty as charged. He appeals.

## DECISION

Aguayo-Ramirez contends his identity theft convictions are not supported by sufficient evidence. Specifically, he contends the State failed to prove that he possessed the licenses and check book with intent to commit or assist the commission of a crime. We agree.

No. 70325-1-I/3

Evidence is sufficient if any rational trier of fact viewing the evidence in a light most favorable to the State could find the elements of the offense proven beyond a reasonable doubt.[2] A defendant challenging the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that may be drawn therefrom.[3] Circumstantial evidence and direct evidence are equally reliable.[4] Inferences drawn from circumstantial evidence, however, "must be reasonable and cannot be based on speculation."[5] "Intent may not be inferred from conduct that is patently equivocal,"[6] but a jury may properly infer intent "where it is plainly indicated as a matter of logical probability."[7] Where "the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly based on pyramiding inferences."[8]

To convict Aguayo-Ramirez of identity theft under the instructions given in this case, the State had to prove that he knowingly possessed the driver's licenses and checkbook "with the intent to commit or to aid or abet any crime ."[9] Relying primarily on Vasquez, Aguayo-Ramirez contends the State failed to carry that burden.

---

[2] State v. Vasquez, 178 Wn.2d 1, 6, 309 P.3d 318 (2013).

[3] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[4] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[5] Vasquez, 178 Wn.2d at 16.

[6] State v. Bergeron, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985).

[7] Delmarter, 94 Wn.2d at 638.

[8] State v. Bencivenga, 137 Wn.2d 703, 711, 974 P.2d 832 (1999) (internal quotation marks omitted).

[9] Clerk's Papers at 134-36.

In <u>Vasquez</u>, the State had to prove that Vasquez possessed forged social security and permanent resident cards with intent to injure or defraud.[10] The <u>Vasquez</u> court noted that while possession plus slight corroborating evidence is sometimes sufficient to infer such intent, intent cannot be inferred from evidence that is patently equivocal. The court also noted that mere possession of items typically used in committing a crime is often not sufficient. For example, possession of a large quantity of drugs, though commonly associated with drug dealing, is nevertheless insufficient, without more, to show possession with intent to deliver.[11] Likewise, possession of stolen pseudoephedrine -- a substance known to be used in manufacturing methamphetamine -- is insufficient to infer intent to manufacture methamphetamine.[12] The <u>Vasquez</u> court emphasized that "inferences of intent may be drawn *only* 'from conduct that plainly indicates such intent as a matter of logical probability.'"[13]

In holding that the facts before it did not allow an inference of intent to injure or defraud, the <u>Vasquez</u> court distinguished cases where the defendants "actually presented their forged documents in hopes of defrauding law enforcement officers or employers."[14] By contrast, there was no evidence before the <u>Vasquez</u> court that Vasquez "had sought work, was working, or planned to work in the area. Neither did

---

[10] <u>Vasquez</u>, 178 Wn.2d at 7.

[11] <u>State v. O'Connor</u>, 155 Wn. App. 282, 290, 229 P.3d 880 (2010).

[12] <u>State v. Brockob</u>, 159 Wn.2d 311, 318, 330-31, 150 P.3d 59 (2006).

[13] <u>Vasquez</u>, 178 Wn.2d at 14 (emphasis added) (quoting <u>State v. Bergeron</u>, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985)).

[14] <u>Vasquez</u>, 178 Wn.2d at 12.

the State offer any evidence suggesting that Vasquez had used the forged social security and permanent resident cards to obtain employment or for any other purpose."[15]

This case is similar to Vasquez. Like Vasquez, Aguayo-Ramirez possessed items commonly associated with the charged crime. But the circumstances did not "plainly indicate" his intent to use them to commit that crime. Although several months had passed since the licenses and checkbook were stolen, the checkbook had not been used and there was no evidence that the licenses, which were hole-punched and likely invalid, had been used for any purpose. Contrary to the State's assertions, Aguyao-Ramirez's nervousness at the time of his arrest was patently equivocal and does not support an inference of intent. His nervousness was attributable to many things, including the unrelated matter for which he was arrested as well as the traffic infraction. Courts have long recognized that it is not unusual for "persons stopped by law enforcement officers to display some signs of nervousness."[16] Deputy McDonald went even further, stating that it is "typical for someone to be nervous" when stopped by law enforcement.[17]

Aguayo-Ramirez's statement that the driver's licenses and checkbook "belong to friends of mine" was also insufficient to support an inference of intent to commit a crime.

---

[15] Vasquez, 178 Wn.2d at 17.

[16] State v. Henry, 80 Wn. App. 544, 552, 910 P.2d 1290 (citing State v. Barwick, 66 Wn. App. 706, 710, 833 P.2d 421 (1992) (reversed on other grounds)).

[17] (Emphasis added.)

The statement was ambiguous as to whether Aguayo-Ramirez was claiming to be friends with the true owners or whether he claimed only that his friends gave him the items. And given Aguayo-Ramirez's need to explain his possession of items apparently belonging to someone else, his statement, like his nervousness, was at best equivocal evidence of any intent to commit a future crime.[18]

In short, while Aguayo-Ramirez may have considered using the licenses and checkbook to commit or assist the commission of a crime, the evidence did not plainly indicate that he formed an intent to do so. The State thus failed to prove the requisite intent beyond a reasonable doubt.

Reversed and remanded with instructions to vacate the convictions.

FOR THE COURT:

_____

_____

_____

---

[18] See Vasquez, 178 Wn.2d at 14-15 (concluding that Vasquez's statements to security guard were patently ambiguous and did not support inference of intent to injure or defraud).