IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37899-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAIME GARCIA-APARICIO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Jaime Garcia-Aparicio appeals convictions for first degree robbery and first degree burglary, challenging both on sufficiency of evidence grounds. Alternatively, having initially been found incompetent to stand trial and held in custody for 46 days awaiting competency restoration treatment, he argues that the charges against him should be dismissed with prejudice as a remedy for that deprivation of his right to substantive due process.

Viewed in the light most favorable to the State, the evidence for both convictions was sufficient. Mr. Garcia-Aparicio's right to substantive due process was violated by the delay in admitting him for competency restoration treatment, but he provides no legal authority or persuasive argument that dismissal of the charges without prejudice following trial is an appropriate remedy. We affirm.

FACTS AND PROCEDURAL BACKGROUND

On a summer day in 2019, Jaime Garcia-Aparicio walked into a gas station convenience store in Wenatchee, selected a six-pack of beer, and brought it to the cashier's counter. Shelly Anderson, the store manager, rang up the beer and put it in a bag as Mr. Garcia-Aparicio appeared to try, unsuccessfully, to use the credit card machine, pushing buttons and "fumbling with it." Report of Proceedings (RP) at 102.[1] Ms. Anderson explained to Mr. Garcia-Aparicio that the machine was for credit cards, to which Mr. Garcia-Aparicio responded that the machine contained his personal information and he needed to get it out. As Mr. Garcia-Aparicio made that odd statement, Ms. Anderson noticed he was "rocking back and forth a little bit," contributing to her conclusion that he might be inebriated and she ought not sell alcohol to him. RP at 85.

Ms. Anderson pulled the bagged beer away from him and told him he was going to have to buy beer somewhere else. At that point, he tried to grab the bag and as Ms. Anderson later described it at trial, "[W]e had a tug of war with the beer." RP at 87. He succeeded in grabbing one of the bottles, tearing off part of the bag as well. He pulled off its cap and threw the cap at her. When she turned and reached for the store phone to call the police, he threw the bottle at her. It hit her hard enough to break. Mr. Garcia-

---

[1] The report of proceedings cited is the volume that includes the trial.

Aparicio then came around to the cashier's side of the counter, followed Ms. Anderson as she sought to retreat, and began hitting her.

As he continued to hit her, he was distracted when a metal water bottle he had brought into the store and had set on the counter fell to the ground. When he stepped aside to get it, Ms. Anderson ran out of the store. He chased her, now armed with his water bottle. He struck her once on the head with the water bottle and continued to pursue her until an arriving customer was able to distract and restrain him.

The State charged Mr. Garcia-Aparicio with robbery in the first degree and burglary in the first degree, later amending the complaint to allege a deadly weapon enhancement.

On August 21, 2019, defense counsel moved the court to order a competency evaluation of Mr. Garcia-Aparicio. The trial court entered the requested order the same day. Dr. David Medved, a licensed psychologist, conducted a two-hour interview of Mr. Garcia-Aparicio at the Chelan County Jail on September 16. Based on that interview and review of jail records and four earlier competency evaluations of Mr. Garcia-Aparicio, Dr. Medved prepared a 10-page report dated October 1, 2019. He diagnosed Mr. Garcia-Aparicio with schizophrenia and concluded that while Mr. Garcia-Aparicio had the capacity to understand the proceedings against him, he lacked the capacity to assist in his own defense. Dr. Medved recommended that Mr. Garcia-Aparicio be committed to

3

Eastern State Hospital for 90 days for competency restoration treatment.

On October 7, the trial court ordered the recommended 90-day competency restoration treatment. Mr. Garcia-Aparicio was not admitted to Eastern State Hospital until 46 days later, on November 22.

Mr. Garcia-Aparicio's competency was successfully restored. The court later ordered a diminished capacity evaluation, and after Mr. Garcia-Aparicio waived his right to a jury trial, the matter proceeded to a bench trial at which Mr. Garcia-Aparicio asserted a diminished capacity defense.

Ms. Anderson testified at trial about Mr. Garcia-Aparicio's dealings with her and her injuries. She testified that when Mr. Garcia-Aparicio realized she was refusing to sell him the beer, he "physically struggled" with her over the six-pack. RP at 87. She also testified that when he threw the bottle he had seized at her, he threw it "really hard." RP at 90. Surveillance videos from inside and outside the store that captured Mr. Garcia-Aparicio's actions were offered and admitted.

Several officers testified to being dispatched to the scene, where they found Mr. Garcia-Aparicio being physically restrained by the man who had managed to deflect his attention from Ms. Anderson.

Mr. Garcia-Aparicio testified that he was diagnosed with schizophrenia in 2009 and takes antipsychotic medication daily. He testified that on the day of the alleged

4

offenses, he took his medication with breakfast and later consumed cannabis and 24 ounces of an 8.1 percent alcoholic beverage. He testified he was thinking clearly until around 11 a.m. that day, after which he does not remember anything until around 6:30 p.m., when he woke up in the back of a police car.

A defense expert testified to his opinion that at the time of the offense conduct, Mr. Garcia-Aparicio was experiencing a psychotic episode and was incapable of forming the intent required for the crimes with which he was charged. The State called its own expert to testify in rebuttal.

The trial court found Mr. Garcia-Aparicio guilty of both charges but found that for purposes of the deadly weapon enhancement alleged by the State, he was not armed with a deadly weapon. He appeals.

## ANALYSIS

Mr. Garcia-Aparicio challenges the sufficiency of the evidence to support the convictions. Alternatively, he seeks dismissal without prejudice of the State's charges as a remedy for the 46 days he was in custody awaiting competency restoration treatment. We address his challenges in the order presented.

I.       SUFFICIENT EVIDENCE SUPPORTS THE CONVICTION FOR ROBBERY IN THE FIRST
         DEGREE

Mr. Garcia-Aparicio challenges the sufficiency of the evidence to prove that he committed first degree robbery and, in that connection, assigns error to the trial court's finding of fact that he "intended to commit theft of property." Clerk's Papers (CP) at 38.

To convict Mr. Garcia-Aparicio of robbery, the State had to prove that with the intent to commit theft, he unlawfully took personal property from Ms. Anderson against her will by use or threatened use of immediate force, violence, or fear of injury. RCW 9A.56.190; *State v. Sublett*, 156 Wn. App. 160, 188, 231 P.3d 231 (2010) (holding that a specific intent to commit theft is an essential nonstatutory element of robbery). "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property . . . of another . . . with intent to deprive . . . her of such property." RCW 9A.56.020(1)(a). To prove robbery in the first degree, the State had to prove that Mr. Garcia-Aparicio was armed with a deadly weapon, displayed what appeared to be a deadly weapon, or inflicted bodily injury during the commission of the robbery or immediate flight therefrom. RCW 9A.56.200.

When evidence sufficiency is challenged, we determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Vasquez*, 178 Wn.2d

1, 7, 309 P.3d 318 (2013). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Mr. Garcia-Aparicio's evidence sufficiency challenge focuses on the element of intent to commit theft. Courts do not infer criminal intent unless the conduct "'plainly indicates such intent as a matter of logical probability.'" *Vasquez*, 178 Wn.2d at 14 (quoting *State v. Bergeron*, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985)). A reviewing court may draw inferences from the record but may not speculate or make "'arbitrary assumption[s].'" *Id.* at 16 (quoting *Bailey v. Alabama*, 219 U.S. 219, 232, 31 S. Ct. 145, 55 L. Ed. 191 (1911)). Intent may be inferred by a defendant's conduct and surrounding circumstances if such intent is logically probable, but not if the evidence is patently equivocal. *Id.* at 8.

Mr. Garcia-Aparicio contends the State's evidence proved only that he intended to damage the store's merchandise, not that he intended to steal it. This, he argues, constitutes malicious mischief, but not theft. The crime of malicious mischief includes "caus[ing] physical damage to the property of another" in an amount exceeding $750, or, where the damage is in a lesser amount, "[k]nowingly and maliciously causing physical damage to the property of another." RCW 9A.48.070(1)(a), .080(1)(a), .090(1)(a).

In orally delivering its findings and conclusions, the trial court stated it could not

7

recall "ever having a case where what happened was so vividly presented to the Court because we happened to have the complete video of start to finish lacking only, of course, the audio." RP at 280. It commented that the video showed "pretty clearly" that Ms. Anderson had the beer in her possession when Mr. Garcia-Aparicio reached across the counter and was able to remove, by force, one of the beers and part of the bag. RP at 281. It commented on the degree of force used when Mr. Garcia-Aparicio threw the beer bottle at Ms. Anderson as "significant," describing him as "hurling the bottle at her," and striking her in the head. RP at 285-86 (emphasis omitted).

Mr. Garcia-Aparicio's original conduct of presenting the beer to Ms. Anderson at the cashier's counter suggests his original intent was to purchase the beer, not steal it. But the State demonstrated that when it became clear she was not going to sell it to him, Mr. Garcia-Aparicio used force to wrongfully take what he could. The evidence that he physically struggled with Ms. Anderson over possession of the six-pack is evidence of an intent on his part to deprive her of the property. And having successfully seized the one bottle of beer, he appropriated it to his own use, as a weapon. Viewed in the light most favorable to the State, the evidence of intent to commit theft was sufficient.

II.     SUFFICIENT EVIDENCE SUPPORTS THE CONVICTION FOR BURGLARY

Mr. Garcia-Aparicio's sufficiency challenge to his first degree burglary conviction focuses on whether sufficient evidence supported the trial court's finding that he

8

"unlawfully entered an area of the convenience store that only employees were authorized to be." CP at 38. He contends the evidence demonstrated that "he never left the room that was open to the public." Br. of Appellant at 1.

To convict Mr. Garcia-Aparicio of first degree burglary, the State had to prove that he entered or remained unlawfully in the convenience store with intent to commit a crime against a person therein, and while in the building or immediate flight therefrom, he assaulted Ms. Anderson. RCW 9A.52.020(1). "A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public." RCW 9A.52.010(2). "Unlawful remaining" occurs when (1) a person has lawfully entered a building pursuant to a license, invitation, or privilege, (2) the license, invitation, or privilege is expressly or impliedly limited, (3) the person violates the limit, and (4) the person intends to commit a crime in the building. *State v. Crist*, 80 Wn. App. 511, 514, 909 P.2d 1341 (1996).

The State's theory of Mr. Garcia-Aparicio's liability for burglary was that he entered lawfully pursuant to a license that was impliedly limited: customers could enter and use most of the store, but they were not authorized to go behind the cashier's counter. He violated that limitation by entering the area behind the counter with the intent to assault Ms. Anderson. In announcing its verdicts at the conclusion of the bench trial, the

9

trial court explained that the basis for its guilty verdict on the burglary count was Ms. Anderson's testimony and the surveillance video of the store's interior, from which the court could see the location and orientation of the cashier's counter.

Focusing on the statutory language that a license to enter a building "which is only partly open to the public is not a license . . . to enter . . . that part of a building which is not open to the public," Mr. Garcia-Aparicio argues it is unclear whether the "part . . . which is not open" to the public must be separate rooms or floors. Br. of Appellant at 12. He cites Washington cases where the part of a building that was not open to the public *was* a separate room or floor. He then argues that the terms "partly open" and "part . . . which is not open" are ambiguous, and the rule of lenity requires this ambiguity to be resolved in his favor. *Id.* (citing *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009)). He argues we must "interpret the term[s] . . . to include only areas that are physically separated, in a different room or floor." *Id.*

Although a statute is ambiguous when it is susceptible to two or more reasonable interpretations, a statute is not ambiguous merely because different interpretations are conceivable. *State v. Evans*, 164 Wn. App. 629, 633, 265 P.3d 179 (2011) (citing *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010)), *aff'd*, 177 Wn.2d 186, 298 P.3d 724 (2013). There is nothing about the words "part" and "partly" that suggests that as applied to a building, they connote rooms or floors. The definitions of "part," for

instance, include

> **1 a** (1) **:** one of the equal or unequal portions into which something is or is regarded as divided **:** something less than a whole **:** a unit (as a number, quantity or mass) held to constitute with one or more units something larger **:** CONSTITUENT, FRACTION, FRAGMENT, MEMBER, PIECE.

WEBSTER'S THIRD NEW INTERCOLLEGIATE DICTIONARY at 1645 (1993). "Partly" is defined to mean "with respect to a part rather than a whole **:** in some measure or degree **:** PARTIALLY." *Id.* at 1648. Legislators could easily have made a distinction between "floors and rooms" that are, or are not, open to the public but chose the more general "parts" instead, presumably recognizing that parts of a building other than floors and rooms may be closed to the public.

Sufficient evidence supports Mr. Garcia-Aparicio's conviction for burglary in the first degree.

III. POSTTRIAL DISMISSAL OF CHARGES WITHOUT PREJUDICE IS NOT A REMEDY FOR AN EXCESSIVE DELAY IN PROVIDING COMPETENCY RESTORATION TREATMENT

Finally, Mr. Garcia-Aparicio contends the State violated his substantive due process right by holding him in jail for the 46 days he awaited competency restoration treatment, and the appropriate remedy is to reverse his convictions and order the charges against him dismissed without prejudice.

Constitutional questions pertaining to the pretrial confinement of incompetent criminal defendants are analyzed under the due process clause of the Fourteenth

Amendment to the United States Constitution. *State v. Hand*, 192 Wn.2d 289, 295, 429 P.3d 502 (2018). Determining whether the defendant's substantive due process right has been violated involves balancing the defendant's liberty interests against interests of the State. *Id.* at 295-96 (citing *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003)). Incompetent defendants have liberty interests in receiving restorative treatment and in being free from incarceration before they have been convicted of the charged offenses. *Id.* at 296 (citing *Mink*, 322 F.3d at 1121). The nature and duration of pretrial confinement for incompetent defendants must bear some reasonable relation to the purpose for which they are committed. *Jackson v. Indiana*, 406 U.S. 715, 733-38, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972). In *Hand*, the Washington Supreme Court observed that two federal courts had held that the Fourteenth Amendment requires the State to admit an incompetent defendant to a state hospital for competency restoration treatment within seven days of an order calling for treatment. 192 Wn.2d at 296 (citing *Mink*, 322 F.3d at 1123; *Trueblood v. Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1022 (W.D. Wash. 2015), *vacated and remanded*, 822 F.3d 1037 (9th Cir. 2016)).

In *Hand*, the defendant had been ordered to undergo competency restoration treatment, to begin within 15 days of the order. *Id.* at 292. Instead, he was held in jail for 76 days awaiting admission for treatment. During the period of delay, Hand first wrote to the court to complain and then brought three successive motions to dismiss. *Id.* While

12

the trial court found no substantive due process violation, it did find Western State

Hospital in contempt and eventually imposed sanctions of $500 a day to be paid to the

county jail. *Id.* at 293.

This court and the Supreme Court both held that the delay *did* constitute a

substantive due process violation, but that the remedy Hand was seeking—dismissal with

prejudice of the charges against him—was not warranted. The Supreme Court discussed

the statutory and nonstatutory bases on which a defendant could seek dismissal without

prejudice during the period of delay. *Id.* at 299-300. It also observed that the sanctions

imposed by the trial court were an appropriate remedy and that Hand may be able to

bring a civil claim for damages. *Id.* at 301.

Unlike Mr. Hand, Mr. Garcia-Aparicio did not request relief during the 46 days he

awaited admission to Eastern State Hospital for competency restoration treatment. He

seeks a remedy now, in the form of posttrial dismissal without prejudice of the charges

against him. He likens his situation to that of a defendant whose charging document is

constitutionally deficient, where both the in-trial remedy and posttrial remedy is dismissal

of the charges without prejudice. But dismissing a conviction without prejudice when the

State files a deficient charging document is a meaningful remedy for what would

otherwise be an unconstitutional lack of notice. Dismissing Mr. Garcia-Aparicio's

charges without prejudice after he has already been tried and convicted does not

meaningfully remedy the violation of his liberty interests in receiving restorative treatment and freedom from pretrial incarceration. Although the 46-day delay was a violation of substantive due process, the remedy he seeks is not warranted.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Staab, J.

_____
Fearing, J.