[Cite as *State v. Gibson*, 2014-Ohio-2352.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2013CA00183 |
| | : | |
| RODNEY GEROME GIBSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2013CR0407

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      May 27, 2014

APPEARANCES:

For Plaintiff-Appellee:

JOHN D. FERRERO, JR.
STARK CO. PROSECUTOR
RENEE M. WATSON
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant:

JACOB T. WILL
116 Cleveland Ave. NW
808 Courtyard Centre
Canton, OH 44702

*Delaney, J.*

{¶1}   Appellant Rodney Gerome Gibson appeals from the August 15, 2013 judgment entry of the Stark County Court of Common Pleas convicting him upon one count of aggravated burglary and one count of felonious assault and sentencing him to an aggregate prison term of 12 years.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose on February 5, 2013 when Shawna Young, Amanda Tornero, and appellant were together at Young's apartment at Roe Court Southeast in Canton, Ohio.  Young and Tornero testified the three had been smoking crack cocaine together off and on for several days.  Tornero was living with Young at the time and dating appellant.

*Tornero and Young's Accounts*

{¶3}   Around 2:00 a.m., appellant left the apartment for the night.  Young and Tornero testified everything seemed fine when appellant left; he and Tornero kissed and hugged, said goodbye, and appellant exited the apartment.  Tornero closed and locked the door behind him and sat back down with Young.

{¶4}   Moments later the women heard loud pounding on the front exterior door of the apartment, startling them.  Young described the pounding as "forceful."  Suddenly a piece of plastic securing the doorbell to the front door broke off and flew across the room.

{¶5}   Young grabbed a phone, called 911, and headed for the bathroom with Tornero following her.  Tornero's dog also came into the bathroom.  The pounding continued and Young heard the front door "squeak," indicating it had opened.  She

whispered to the 911 operator that the person was inside the apartment. Young and Tornero placed themselves against the bathroom door to hold it shut. Both women identified appellant as the person who forced his way into the apartment.

{¶6} Appellant pushed the bathroom door open, the women pushed it closed, and appellant pushed it open again and entered the bathroom. Young was still on the phone with 911. Appellant struck Young, knocking the phone out of her hand, which fell to the floor and broke into pieces.

{¶7} Tornero was in the corner behind Young. Young fell or ducked out of the way and saw appellant strike Tornero in the face. Tornero testified appellant also kicked her squarely in the face. Both women covered their faces.

{¶8} Young left the bathroom to look for another phone and observed appellant rummaging in Tornero's purse before he left the apartment through the front door. Tornero's dog followed appellant out the door.

{¶9} When questioned as to what might have led to the incident, Tornero testified appellant thought there was someone with her in the apartment after he left. Appellant kept asking "where's [he] at" and she told him no one else was there. She testified they had argued over appellant's "paranoia" about other men before.

{¶10} Young found another phone and called 911 again. She found Tornero still in the bathroom bleeding from her nose. She asked if appellant struck her and Tornero replied he kicked her in the nose. Young gave Tornero a towel and went to the window to direct police to the apartment.

{¶11} Tornero was transported to Aultman Hospital where she was treated in the emergency room. The treating physician testified Tornero sustained a nasal bone

fracture, swelling under both eyes, and bleeding from the nose consistent with being bludgeoned or some type of direct injury to the nasal bone. Tornero told the doctor she had been kicked and punched in the face by her boyfriend. She was treated that night and referred to a specialist.

{¶12} Young testified that shortly after their return from the hospital, appellant started calling and texting Tornero offering to pay her to drop the charges. Tornero continued to have contact with appellant after the incident. She testified he texted her and called her with threats, promises, and apologies asking her to change her story.

{¶13} Defense counsel's investigator testified he spoke to Tornero on the telephone and she told him her injuries occurred when she was struck by the bathroom door. Tornero testified appellant told her to say this.

*The Investigation*

{¶14} Police officers investigating the incident found the front door of the apartment broken in, the bathroom door broken, and blood on the bathroom floor. A broken cell phone was on the floor. Tornero and Young were visibly upset and crying and told police what happened. Young provided a written statement at the hospital. The Canton Police I.D. Bureau took photographs of the scene and of Tornero's injuries. Swabs of blood were collected from the bathroom door and the rear exterior door of the apartment. Crime lab personnel testified blood on the bathroom door was identified as appellant's based upon a CODIS match in the statewide database.

*The Fiancee's Testimony*

{¶15} Appellant's fiancée testified on his behalf at trial; she said appellant came home around 3:00 a.m. on February 5, 2013 "agitated, but not crazy." At some point

appellant also showed up with a dog that stayed with them for several weeks. His fiancée later learned the dog belonged to Tornero.

*Indictment, Trial, and Conviction*

{¶16} Appellant was charged by indictment with one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), a felony of the first degree; one count of felonious assault pursuant to R.C. 2903.11(A)(1), a felony of the second degree; one count of intimidation pursuant to R.C. 2921.04(B), a felony of the third degree; and one count of disrupting public services pursuant to R.C. 2909.04(A)(1), a felony of the fourth degree. Appellant entered pleas of not guilty and the case proceeded to jury trial. Appellant moved for judgments of acquittal at the close of appellee's evidence and at the close of all the evidence; the motions were overruled. Appellant was found guilty of aggravated burglary and felonious assault; he was found not guilty of intimidation and disrupting public services.

{¶17} The trial court sentenced appellant to an aggregate prison term of 12 years.

{¶18} Appellant now appeals from the judgment entry of conviction and sentence.

{¶19} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶20} "I. THE TRIAL COURT ERRED IN PREVENTING APPELLANT FROM INTRODUCING EVIDENCE OF SHAWNA YOUNG'S PRIOR CONVICTION FOR SOLICITING FOR PROSTITUTION DURING CROSS-EXAMINATION."

{¶21} "II. THE DEFENDANT'S CONVICTIONS FOR ONE COUNT OF AGGRAVATED BURGLARY AND FELONIOUS ASSAULT WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**ANALYSIS**

**I.**

{¶22} In his first assignment of error, appellant argues the trial court should have allowed him to cross-examine Young regarding a conviction for solicitation. We disagree.

{¶23} The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). In order to find an abuse of discretion, the reviewing court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶24} Evid.R. 609(A)(3) provides, subject to the trial court's weighing of the prejudicial impact of the question pursuant to Evid.R. 403(B), evidence that a witness has been convicted of a misdemeanor is admissible if the crime involves dishonesty or false statement. In this case, a witness was convicted of one count of solicitation, the

elements of which are "no person shall solicit another to engage with such other person in sexual activity for hire." R.C. 2907.24(A).[1]

{¶25} Solicitation does not involve dishonesty or a false statement. Appellant summarily argues solicitation is a crime of dishonesty, but the offense contains no element of deception. See, *State v. Walburg*, 10th Dist. Franklin No. 10AP-1087, 2011-Ohio-4762 (a crime of dishonesty by definition includes an element of deception identical to that in a theft offense or the making of a false statement). The rule makes no provision for impeachment by a crime of "moral turpitude." *State v. Griffin*, 5th Dist. Stark No. CA-9254, unreported, 1993 WL 471413, *1, appeal not allowed, 69 Ohio St.3d 1406, 629 N.E.2d 1368.

{¶26} We find the trial court did not abuse its discretion in excluding cross-examination concerning the prior conviction. Appellant's first assignment of error is overruled.

II.

{¶27} In his second assignment of error, appellant argues his conviction upon one count of aggravated burglary[2] is against the manifest weight and sufficiency of the evidence. We disagree.

{¶28} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*,

---

[1] Appellee states Young was charged pursuant to Canton Municipal Ordinance 533.09, the language of which tracks the statute. The specific section or ordinance number of the conviction is not in the record.

[2] Appellant does not challenge his conviction upon one count of felonious assault.

61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶29} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."  *State v. Thompkins*, supra, 78 Ohio St.3d at 387.  Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction."  *Id.*

{¶30} Appellant was convicted upon one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: [t]he offender inflicts, or attempts or threatens to

inflict physical harm on another." Appellant argues appellee failed to establish he trespassed in the apartment with purpose to commit a criminal offense.

{¶31} "For purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 2000-Ohio-472 721 N.E.2d 1037, syllabus. As appellee points out, the intent to do an act may be inferred from completion of the act. *State v. Rojas*, 64 Ohio St.3d 131, 140, 592 N.E.2d 1376 (1992). Appellee established appellant trespassed in Young's apartment, breaking in the door, and assaulted Tornero inside the bathroom by hitting her and kicking her in the face. Appellant argues Tornero is not credible because she told his investigator she was injured when the bathroom door struck her in the face. Assuming *arguendo* her injuries occurred in this manner, those injuries are a reasonably foreseeable result of appellant forcing his way into the bathroom. Tornero's injuries were a "natural and logical outcome" of the burglary and were neither "extraordinary [nor] surprising." *State v. Williams*, 4th Dist, Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 40, appeal not allowed, 134 Ohio St.3d 1509, 2013-Ohio-1123, 984 N.E.2d 1102.

{¶32} This is not the exceptional case in which the evidence weighs heavily against appellant's conviction for aggravated burglary. We find the conviction is not against the manifest weight of the evidence and is supported by sufficient evidence, and therefore overruled appellant's second assignment of error.

## CONCLUSION

{¶33} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J. and

Gwin, P.J.

Wise, J., concur.