[Cite as *State v. Holsinger*, 2017-Ohio-1378.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16CA48 |
| JERRY D. HOLSINGER, JR. | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
Court of Common Pleas, Case No.
2015CR0639R

JUDGMENT:                                 Affirmed

DATE OF JUDGMENT ENTRY:        April 12, 2017

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

DANIEL ROGERS                          RANDALL FRY
Richland County Prosecutor's Office   10 West Newlon Place
38 S. Park Street                          Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, J.*

{¶1}    Defendant-appellant Jerry D. Holsinger, Jr. ["Holsinger"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    On January 22, 2014, R. B. obtained a Civil Protection Order ["CPO"] from the Richland County Domestic Relations Court against Holsinger, her ex-companion and father of R.B.'s two children.  The CPO prohibited Holsinger from contacting R.B. in any way or going to R.B.'s residence for any reason, even with R.B.'s permission.

{¶3}    Around 3:00 pm on April 10, 2015, R.B. had her children contact Holsinger and advise him that they would not be home.  R.B. dropped her children off at their friends' houses and returned to her home to spend the evening with S.E., her boyfriend.  S.E. arrived at R.B.'s home shortly thereafter and parked his car in the driveway next to R.B.'s vehicle.  After speaking with S.E. for a few minutes, R.B. went to the bathroom to take a bath.

{¶4}    As R.B. began her bath and S.E. stayed in the kitchen checking his email on his smartphone, Holsinger opened the backdoor and entered R.B.'s home.  Upon entering the home, Holsinger stared at S.E. angrily.  S.E., who had never met Holsinger, asked Holsinger twice "who are you?"  After S.E. told Holsinger that R.B. was in the bathroom, Holsinger stormed down the hallway towards the bathroom, yelled R.B.'s name.  Holsinger referred to R.B. as a "bitch" and a "cunt."  (1T. at 165, 166).  Holsinger pounded on the bathroom door and asked R.B. where their son was.  R.B. told Holsinger he was not supposed to be there and that their son was not home.

{¶5}    As Holsinger continued pounding on the door and yelling at R.B., S.E. grabbed Holsinger from behind, turned him around and pushed him down the hallway. (2T. at 219-220).  S.E. "lined" Holsinger up and gave Holsinger "a quick left jab to the nose just to let him know that it's not going to go the way he thinks it's going to go down this time."  (1T. at 169; 220).

{¶6}    After being punched by S.E., Holsinger turned and ran towards the front door. Holsinger went around the corner into the living room and hid by the fireplace out of S.E.'s sight.  As S.E. began walking towards the front door and turned the corner into the living room, Holsinger threw a ceramic potted plant towards S.E.'s head.  S.E. put up his left arm to protect himself, but the pot deflected off his left forearm and struck S.E. near his left temple, before hitting the ground and breaking into pieces.  S.E. suffered a cut, bruise, and knot on his head as a result of being struck by the ceramic potted plant thrown by Holsinger.

{¶7}    After the ceramic potted plant struck S.E. it fell to the floor, and broke into pieces.  Holsinger grabbed a shard from the broken pot and began slashing towards S.E.'s head and neck.  As S.E. held up his hands to protect his head and neck, Holsinger cut S.E.'s right wrist with the shard, causing a deep four-inch laceration and resulting in a permanent scar.

{¶8}    After cutting S.E.'s wrist, Holsinger reached for another shard, at which point S.E. grabbed onto Holsinger's shirt to prevent Holsinger from grabbing any more shards.  After S.E. let go, Holsinger grabbed several more shards of the broken pot and gestured towards S.E. as though he intended to throw the shards at him.

{¶9} Around this time, R.B. exited the bathroom and repeatedly told Holsinger to leave. Holsinger left the residence. As Holsinger left, he threw one of the shards towards S.E.'s head, but missed and the shard struck the kitchen wall.

{¶10} Holsinger testified that he was acting in self-defense from an unprovoked attack from S.E.

{¶11} Upon deliberation, the jury returned guilty verdicts against Holsinger for Count I, Aggravated Burglary, in violation of R.C. 2911.11(A), Count II, Burglary, in violation of R.C. 2911.12(A)(2), Count III, Burglary, in violation of R.C. 2911.12(B), Count IV, Felonious Assault, serious physical harm, in violation of R.C. 2903.11(A), Count V, Felonious Assault, deadly weapon, in violation of R.C. 2903.11(A)(2) and Count VI, Violation of a Civil Protection Order, in violation of R.C. 2919.27(A)(1) and (B)(4).

{¶12} During the Sentencing Hearing on June 27, 2016, the trial court heard from Holsinger, his attorney, Holsinger's sister, and the state. The trial court determined that Counts I - Aggravated Burglary, II - Burglary and III - Burglary, were allied offenses subject to merger, as Counts II and III were lesser-included offenses to Count I. The trial court further held that Count VI - Violating a Protection Order was the underlying criminal offense for Count I - Aggravated Burglary and, thus, subject to merger. However, the trial court determined that Counts IV and V Felonious Assault were not allied offenses subject to merger with each other or with the other four counts, as they involved separate acts and resulted in separate and identifiable harms to S.E. The trial court sentenced Holsinger to five years on merged Count I, four years on Count IV and three years on Count V, with those sentences to be served consecutively for a cumulative term of twelve years. The trial court also imposed five years of mandatory post-release control.

*Assignments of Error*

{¶13} Holsinger raises four assignments of error,

{¶14} "I. THE EVIDENCE PRESENTED BY THE APPELLEE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON COUNT V, FELONIOUS ASSAULT AS DEFINED IN O.R.C. 2903.11 (A) (2);

{¶15} "II. THE EVIDENCE PRESENTED BY THE APPELLEE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON COUNT IV, FELONIOUS ASSAULT AS DEFINED BY O.R.C. 2903.11(A)(1);

{¶16} "III. THE TRIAL COURT ERRED IN NOT MERGING COUNT IV AND COUNT V OF THE INDICTMENT FOR PURPOSES OF SENTENCING.

{¶17} "IV. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO OHIO RULE CRIMINAL PROCEDURE 29 A."

I., II. and IV.

{¶18} In his first assignment of error, Holsinger argues that the sufficiency of the evidence did not support his conviction on Count 5-Felonious Assault pursuant to R.C. 2903.11(A) (2) ["deadly weapon"]. Similarly, in his second assignment of error, Holsinger argues that the sufficiency of the evidence did not support his conviction on Count 4-Felonious Assault pursuant to R.C. 2903.11(A) (1) ["serious physical harm"]. Lastly, in his fourth assignment of error, Holsinger argues that the trial court erred when it denied his Ohio Crim.R. 29 motion for acquittal on Count 1-Aggravated Burglary pursuant to R.C. 2911.11(A)(1).

{¶19} Holsinger's first, second and fourth assignments of errors raise common and interrelated issues; therefore, we will address the arguments together.

***Standard of review.***

{¶20} In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, *e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991), *superseded by State constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997).

{¶21} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶22} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall

find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶23} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

**{¶24}** *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

***Count V - Felonious Assault ["deadly weapon"].***

**{¶25}** R.C. 2903.11, Felonious Assault, provides, in relevant part,

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶26}** R.C. 2923.11(A) defines a deadly weapon as, "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

**{¶27}** "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶28}** In the case at bar, the parties agree that Holsinger threw a large ceramic potted planter at S.E. S.E. tried to deflect it with his arm. In the process, S.E. was hit in the left forearm and in the head by the planter. S.E. testified that he was in pain as a result of the planter hitting him. The jury was given photographs of the broken planter and the residence. Testimony established that the planter was large, contained soil and a ficus plant. (1T. at 101-102).

**{¶29}** The evidence presented at trial was that the ceramic potted planter was a deadly weapon. Coupled with the trial court's instructions the issue of whether the ceramic

planter was a deadly weapon was a fact for the jury to determine. *See e.g.*, *State v. Tilley,* 2nd Dist. Montgomery No. 19198, 2002-Ohio-6776 (empty 22-ounce beer bottle used as a weapon can be a "deadly weapon"); *State v. Dennison,* 9th Dist. Medina No. 2660-M, 1998 WL 114392(Mar. 4, 1998) (whether broken beer bottle was a "deadly weapon" was fact for jury to decide).

{¶30} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Holsinger had caused physical harm to S.E. by means of a deadly weapon.

{¶31} We hold, therefore, that the state met its burden of production regarding felonious assault and, accordingly, there was sufficient evidence to support Holsinger's conviction for felonious assault in Count V.

### Count IV - Felonious Assault ["serious physical harm"].

{¶32} R.C. 2903.11, Felonious Assault, provides, in relevant part,

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

{¶33} Under R.C. 2901.01(A)(5), "serious physical harm to persons" means:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶34} In the case at bar, Holsinger cut S.E. with a shard from the broken potted planter. The jury was shown a photograph of the cut on Holsinger's wrist. (State's Exhibit 9; 10; 2T. at 194 - 195). Holsinger showed the resulting scar to the jury. (2T. at 179). Additionally, the cut was deep, continued to reopen for weeks and left a scar. (2T. at 179-180; 195).

{¶35} Court's have held that "[t]he degree of harm that rises to level of 'serious' physical harm is not an exact science" given that the definition uses terms such as "substantial," "temporary," "acute" and "prolonged." *State v. Miller*, 8th Dist. Cuyahoga No. 98574, 2013–Ohio–1651, ¶18, *quoting State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007–Ohio–4996, ¶ 37; *Accord, State v. Clark,* 8th Dist. Cuyahoga No. 104076, 2016-Ohio-5143, ¶ 20 . The extent or degree of a victim's injuries is "normally a matter of the weight rather than the sufficiency of the evidence." *Irwin* at ¶ 37, *citing State v. Salemi*, 8th Dist. Cuyahoga No. 81091, 2002–Ohio–7064, ¶ 34.

{¶36} A scar is a permanent disfigurement. See *State v. Edwards*, 83 Ohio App.3d 357, 360, 614 N.E.2d 1123 (10th Dist. 1992), (where victim received cut above eye, resulting in permanent scar, jury could reasonably find that victim sustained some permanent disfigurement constituting serious physical harm); *State v. Ward*, 10th Dist. Franklin No. 10AP–430, 2011–Ohio–608, ¶ 15 (permanent scars caused by the

defendant's splashing boiling water on the victim was serious physical harm); *State v. Jamhour*, 10th Dist. No. Franklin No. 06AP–20, 2006–Ohio–4987, ¶ 11 (scarring is a permanent disfigurement and evidence supported finding of serious physical harm; *State v. Henry,* 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶42.

**{¶37}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Holsinger had caused serious physical harm to S.E.

**{¶38}** We hold, therefore, that the state met its burden of production regarding felonious assault and, accordingly, there was sufficient evidence to support Holsinger's conviction for felonious assault in Count IV.

### Count I – Aggravated Burglary.

**{¶39}** In order to support Holsinger's conviction on Count I - Aggravated Burglary pursuant to R.C. 2911.11(A)(1), the state needed to prove Holsinger: 1). "by force, stealth, or deception" trespassed in R.B.'s home, 2). someone other than Holsinger was present at the time of the trespass, 3).Holsinger committed the trespass with purpose to commit any criminal offense, and 4). Holsinger "inflict(ed), or attempt(ed) or threaten(ed) to inflict physical harm on another."

**{¶40}** In the case at bar, Holsinger forcibly entered R.B.'s home, without permission and in violation of a CPO. Both R.B. and S.E. were present and both of their vehicles were parked in the driveway. We have previously noted sufficient evidence was presented from which the jury could find that Holsinger inflicted serious physical harm on S.E. and Holsinger inflicted physical harm on S.E. by means of a deadly weapon.

**{¶41}** Holsinger asserts in his fourth assignment of error that the state failed to present sufficient evidence he entered R.B.'s home with the purpose of assaulting R.B. or S.E. as alleged in the Bill of Particulars.

**{¶42}** We note that the purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St. 3d 169, 171, 478 N.E. 2d 781, 784(1985). It also acts to "inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." *State v. Fowler*, 174 Ohio St. 362, 364, 189 N.E.2d 133, 134(1963). Consistent with this purpose, Crim.R. 7(D) allows amendment of a bill of particulars "before, during, or after a trial," provided that "no change is made in the name or identity of the crime charged." *See, also, State v. Brown*, 99 Ohio App.3d 604, 610, 651 N.E.2d 470, 474 (10th Dist. 1994).

**{¶43}** "For purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 2000–Ohio–472 721 N.E.2d 1037, syllabus; *Accord, State v. Gibson,* 5th Dist. Stark No. 2013CA00183, 2014-Ohio-2352, ¶ 31. In *State v. Lynn*, the Ohio Supreme Court observed,

> The relevant portion of the aggravated-burglary statute states: "No person, by force * * * shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

R.C. 2911.11(A)(1). We agree with the statement that "'the specific crime or crimes intended to be committed inside burglarized premises is not an element of burglary that must be included in the * * * jury instructions * * *.' " (Emphasis sic.) *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 71 (plurality opinion), *quoting State v. Bergeron* (1985), 105 Wash.2d 1, 16, 711 P.2d 1000. Consequently, the trial court was not required to instruct the jury on the elements of any underlying offense.

129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, ¶ 16.

**{¶44}** However, in the case at bar, the trial judge instructed the jury as follows,

The prosecutor contends in this case that the criminal offense Mr. Holsinger intended to commit inside the occupied structure was felonious assault and /or simple assault and /or the violation of a protection order. I will be defining those crimes later on in these instructions, so when you need to look for the definitions of those crimes, you will look later on in the instructions.

3T. at 391. Holsinger did not object to these instructions. 3T. at 380.

**{¶45}** The evidence presented establishes that Holsinger entered the residence in violation of a CPO and that while inside he assaulted S.E. Contrary to Holsinger's argument in his fourth assignment of error, the trier of fact was not required to find that he formed the intent to assault S.E. before he entered the occupied structure; rather the trier of fact could find that Holsinger formed the intent to assault S.E. while Holsinger was inside the occupied structure. *State v. Fontes.*

**{¶46}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Holsinger committed the crime of Aggravated Burglary.

**{¶47}** We hold, therefore, that the state met its burden of production regarding aggravated burglary and, accordingly, there was sufficient evidence to support Holsinger's conviction for aggravated burglary as set forth in Count I.

**{¶48}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. See*, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

**{¶49}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶50}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶51}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony,

but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

{¶52} In the case at bar, the jury heard the witnesses, viewed the evidence and heard Holsinger's arguments and explanations about his actions.

{¶53} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Holsinger of the charges.

{¶54} Based upon the foregoing and the entire record in this matter, we find Holsinger's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Holsinger and his arguments. This court will not disturb the jury's finding so long as competent evidence was present to

support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Holsinger's guilt.

**{¶55}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Holsinger was convicted.

**{¶56}** Holsinger's first, second and fourth assignments of error are overruled.

III.

**{¶57}** In his third assignment of error, Holsinger argues that the trial court erred when it failed to merge his convictions on Count IV - Felonious Assault and Count V - Felonious Assault as allied offenses pursuant to R.C. 2941.25(A).

**{¶58}** R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶59}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence,

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff,* at syllabus.  The Court further explained,

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?  If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

* * *

An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.

{¶60}  After a thorough review of the facts of this case, we conclude that the trial court did not err in failing to merge the two counts of felonious assault.  In the case at bar,

Count IV was charged under R.C. 2903.11(A)(1), "knowingly causing serious physical harm to another." Count V was a charge of felonious assault under R.C. 2903.11(A)(2), "knowingly causing or attempting to cause physical harm to another, by means of a deadly weapon or dangerous ordinance."

{¶61} In Count IV Holsinger picked up a large potted planter and threw it at S.E.'s head. Holsinger could have, but did not, exit the residence at that point. Instead, Holsinger picked up a sharp piece of the broken planter and used it to cut or slash S.E. Although these events happened quickly, we find that there was a distinction and separation between throwing the planter and picking up the shard. Although Holsinger's intent behind both actions was to injure S.E. the two acts were committed separately and Holsinger caused separate, identifiable harm. The Ohio Supreme Court held that where conduct is committed separately, the separate acts are not subject to merger. *Ruff* at paragraph three of the syllabus.

{¶62} Holsinger's third assignment of error is overruled.

{¶63} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

Hoffman, J., concur