IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  39309-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID SALMERON, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted appellant David Salmeron of one count of assault,

one count of felony harassment, and one count of violation of a protection order, but

acquitted him of two other counts of felony harassment, among other charges.  The three

counts of felony harassment arose from three distinct confrontations with Salmeron's

former girlfriend, but the charging instrument and the jury instructions did not distinguish

between the three incidents when listing the counts.  One of the trio of episodes entailed a

threat to shoot rather than an express threat to kill, and Salmeron insists that a threat to

shoot does not equate to a threat to kill, an element of felony harassment.

On appeal, David Salmeron challenges only his conviction for felony harassment.

He wonders which of the three confrontations formed the basis of this one conviction,

and, in turn, questions whether the jury unanimously convicted him based on the same incident. He speculates that one or more jurors may have convicted him based on the altercation during which he threatened to shoot and contends that this one incident did not qualify as felony harassment. Although Salmeron challenges his conviction on grounds of insufficient evidence, a deficient information, and inadequate jury instructions, as we explain later, he grounds all three assigned errors on insufficiency of evidence. We hold that a rational jury could have concluded that the threat to shoot constituted a threat to kill, and thus substantial evidence supported his felony harassment conviction regardless of which of the three incidents formed the basis of the jury verdict of guilt. We affirm Salmeron's conviction, but remand for resentencing.

FACTS

David Salmeron's prosecution arises from his 2021 physical attacks on Victoria, a pseudonym, Salmeron's former girlfriend. Salmeron and Victoria began dating in 2013. The couple thereafter begat two sons, X.S. and V.S. Over the years, the relationship deteriorated, leading Victoria to obtain protection orders against Salmeron due to domestic abuse. By 2021, Salmeron had twice been convicted of violating these orders. An undeterred Salmeron continued with the abuse in early 2021.

The three threats to Victoria by David Salmeron, which give rise to the prosecution of three felony harassment charges, occurred in January and February 2021, but no one knows the day of the month of any of the three. We follow the State's lead

and distinguish the harassments by the location in Victoria's residence where each occurred: the living room, the master bathroom, and the master bedroom, likely in that chronological order.

On one occasion, David Salmeron was present in the living room with Victoria despite the restraining order. The two sons, who lived with Victoria, sat on the living room couch. Victoria demanded that Salmeron return tools he had borrowed. Salmeron responded that Victoria had no need for the tools. Victoria declared that she would call the sheriff if Salmeron refused to return her tools. Salmeron threatened to shoot Victoria if she contacted law enforcement. Victoria became frightened.

The second incident occurred on a later day in Victoria's bathroom. David Salmeron entered Victoria's residence unannounced and in violation of the protective order. Victoria then had a gentleman caller at her home. Salmeron walked across the house and into the master bathroom. Victoria followed him into the room. Salmeron pressed his forehead against Victoria's forehead. Salmeron asked, "are you fucking him?" 1 Rep. of Proc. (RP) at 183. Victoria insisted she need not answer the question. Victoria added that she did not understand why Salmeron was in the residence and that he must leave. Salmeron, still with his forehead pressed to Victoria's forehead, asked his vulgar question again. He received the same reply. Salmeron asked one more time, and Victoria declined to respond a third time. Salmeron's body shook and his eyes turned red. Victoria had never seen him in such a state of anger. An alarmed Victoria answered

3

the question: "I'm not, but you need to leave my house." RP at 184. Each time Salmeron posed his question, he added that he would "fucking kill" Victoria if she had sex with another man. RP at 184.

David Salmeron made a third appearance at Victoria's house. Victoria's male friend visited her that night. After the friend left, Victoria walked to her bedroom. Salmeron, without Victoria knowing he had entered the house, emerged into the master bedroom. Victoria questioned Salmeron as to the reason for his presence, and she insisted that he leave the premises. Salmeron repeated his conduct and questioning from his second appearance. An angry Salmeron approached Victoria, shook his finger next to Victoria's face, and, with a raised voice, insisted that she answer whether she was "fucking" her male caller. RP at 186. Salmeron warned Victoria:

> You better not be fucking him. You're mine. You'll always be mine and that's it.

RP at 186. Victoria retorted:

> I'll fuck whoever I want to fuck because we're not together. You need to leave me alone. Leave my house.

RP at 186.

## PROCEDURE

The State of Washington, in a second amended information, charged David Salmeron with the following crimes:

4

Count I: assault in the fourth degree against Victoria, while having two or more earlier domestic violence convictions, on or about December 20, 2020

Count II: felony harassment by threatening to kill Victoria and placing her in reasonable fear that he would execute the threat, between January 1, 2021 and February 28, 2021

Count III: violating a court order that protected Victoria from the presence of Salmeron, between January 1, 2021 and February 28, 2021

Count IV: felony harassment by threatening to kill Victoria and placing her in reasonable fear that he would execute the threat, between January 1, 2021 and February 28, 2021

Count V: violating a court order that protected Victoria from the presence of Salmeron, between January 1, 2021 and February 28, 2021

Count VI: felony harassment by threatening to kill Victoria and placing her in reasonable fear that he would execute the threat, between January 1, 2021 and February 28, 2021

Count VII: violating a court order that protected Victoria from the presence of Salmeron, between January 1, 2021 and February 28, 2021

Count VIII: second degree assault by assaulting Victoria with strangulation or suffocation, on February 9, 2021

Count IX: violating a court order that protected Victoria from the presence of Salmeron, on or about February 9, 2021

The State pled aggravating circumstances for all counts. The State also alleged that each crime constituted domestic violence.

We note that the State charged David Salmeron with one count of fourth degree assault, one count of second degree assault, three counts of felony harassment, and four

5

counts of violating a protection order. Count I related to an incident earlier than the three

confrontations that formed the felony harassment counts. Each count of felony

harassment read identically. Each count of violating a court order read identically. None

of the charges included a location of the crimes, other than Douglas County. None of the

felony harassment or violation of court order counts specified a date other than sometime

between January 1 and February 28, 2021.

During closing arguments, the State explained to the jury:

> So, moving—so December 20—23rd, 2020, the no contact order
> going into place and there's three incidences where [Victoria]'s threatened
> and pretty scared. So, each threat is charged in a different count. And that
> means that when you are deliberating, you all have to make sure that you're
> speaking about the—the same incident. Because you have to find the same
> incident proved beyond a reasonable doubt, and you have to be in
> agreement unanimously about each separate incident. So, I would suggest
> to be careful not to mix and match, right?
> So, the way that I originally had kind of broken down each threat to
> kill was based on the location because they all happened in a different
> location inside of the home.

RP at 471.

The State recounted, in the wrong chronology, Victoria's testimony:

> So, the first one was in the bathroom. That was the night when she
> had a friend over, a male friend, and David came to the house, uninvited,
> unannounced, walked in the front door without knocking or asking.
> [Victoria] said that she and her friend were seated at the kitchen table and
> she saw David walk in, look at them, shake his head at them and then walk
> to a different area in the house towards the bathroom.
> And so, [Victoria is] thinking well, it's pretty odd that David just
> came in—he's not invited, he's not supposed to be here. So, she got up and
> she followed him back to—and they went into the bathroom and they

6

closed the door so company and the kids were not privy to what was going on in the bathroom.

Now, what was going on in the bathroom? This is the time when David, and—and [Victoria] testified to this, David stuck his forehead to her forehead and was very mad that she had a male visitor over and said are you fucking him? And he asked her that three times. And each time he asked her he said if you are fucking him, I'm going to fucking kill you. That's the first threat to kill.

RP at 472-73.

The next incident that [Victoria] told us about, and I'm—I may be out of order in this—in the sequential times that she was telling the story. I believe—well, I—I won't say the next time because I don't know—I don't remember off the top of my head what she said, but this was in the bedroom. So, let's talk about the threat to kill in the bedroom.

RP at 473-74.

The third threat [Victoria] described was in her living room. And this threat was in front of the—at least one boy, [X.S.], and we heard [X.S.] talk about that threat. [Victoria] described this one in the living [room] as unique and imprinted on her memory because David used the word shoot. I'm going to shoot you.

RP at 474.

Several jury instructions are important to this appeal. Jury instruction 3 read:

A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Clerk's Papers (CP) at 134. Jury instruction 4 declared:

The State alleges that the defendant committed acts of harassment on multiple occasions. To convict the defendant on any count of harassment, one particular act of harassment must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You

7

need not unanimously agree that the defendant committed all the acts of
harassment.

CP at 135. Jury instructions 12, 17, and 20 formed the to-convict instructions for the

three counts of felony harassment alleged in counts II, IV, and VI.

The jury convicted David Salmeron of the one count of assault in the fourth degree

(count I), one of the three counts of felony harassment against an intimate partner (count

II), and one of the three counts of violation of a court order against an intimate partner

(count III). Someone wrote, on the top right-hand corner of the jury form for count II,

the words "living room." CP at 168. We do not know who wrote the words or the time

at which someone wrote the words. The jury acquitted Salmeron of the remaining six

charges.

In a special verdict, the jury found the count II, the felony harassment conviction,

to entail aggravated domestic violence because the crime occurred in the sight or sound

of Victoria's minor children. The superior court, in part based on the aggravating

circumstances, sentenced David Salmeron to an exceptional sentence of 68 months,

consisting of 60 months for count I, the assault conviction, and 48 months for count II.

The court ran 40 months of count II concurrently with count I and ran the remaining

8 months consecutively with count I.

Paragraph 2.6 of David Salmeron's judgment and sentence reads that he

committed a felony firearm offense and demands that Salmeron register as a felony

8

firearm offender.  The State presented no evidence at trial that Salmeron owned a gun

or displayed a gun when threatening Victoria.  Paragraph 4.2 of the sentence ordered one

year of community custody on his felony harassment conviction.  The sentencing court

adjudged Salmeron indigent at the time of sentencing.

## LAW AND ANALYSIS

On appeal, David Salmeron only challenges his one conviction for felony

harassment and his sentence.  With regard to the one conviction, Salmeron argues that

the State failed to plead the essential elements of felony harassment in its second

amended information.  He also assigns error to the trial court's failure to insert all

elements of the crime in the to-convict instruction.  Finally, he contends that the State

presented insufficient evidence to convict him of felony harassment.

David Salmeron's assigned error regarding insufficiency of evidence focuses on

Victoria's testimony about the threat issued in the living room.  According to Victoria,

during the bathroom and bedroom confrontations, Salmeron threatened to "kill" her.  But

during the living room episode, Salmeron only threatened to "shoot" her.  Salmeron

insists that a threat to shoot never equates to a threat to kill and a threat to kill is an

essential element of felony harassment.  Going further, because of this critical distinction

in the analysis of Salmeron, the charging information needed to distinguish the living

room incident from the other two hostilities so that we know that the jury only convicted

9

Salmeron based on a threat to kill. In the alternative, the felony harassment to-convict instructions needed to distinguish among the three charged events.

David Salmeron's overarching concern about the sufficiency of evidence, the adequacy of the charging instrument, and the suitability of the jury instructions centers on the law's demand that the jury unanimously vote to convict on one action of the accused, rather than jurors respectively choosing different events that formed the crime. An accused possesses a constitutional right to a unanimous jury verdict. U.S. CONST. amend. VI; *Ramos v. Louisiana*, 590 U.S. 83, 92-93, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); CONST. art. I, §§ 21, 22; *State v. Carson*, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015). When the prosecution presents evidence of multiple acts that could form the basis of one count, the State and the court must take steps to ensure that all members of the jury decided to convict on the same act. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). The court may resolve this dilemma by instructing the jury that it must unanimously rely on a specific criminal act to support its conviction. *State v. Kitchen*, 110 Wn.2d 403, 411 (1988). David Salmeron's trial court delivered a jury unanimity instruction. Still, Salmeron worries that we do not know the incident that formed the basis for count II, the only count of felony harassment on which the jury convicted him. The jury could have relied on the living room confrontation that lacked sufficient evidence because he only threated to shoot, not to kill.

10

During oral argument, David Salmeron's counsel conceded that, if this court deems a threat to shoot to constitute a threat to kill, Salmeron's assignments of error regarding the adequacy of the second amended information and the acceptability of the jury instructions fail. Because all three incidents would then lack a difference for charging purposes or for instructing purposes, the State committed no mistake by failing to distinguish, in the information, between the three confrontations at the house. Also, the jury unanimity instruction given by the trial court assured jury unanimity despite the to-convict instruction failing to distinguish between the three events.

We adopt David Salmeron's concession not only because it comes from Salmeron but also because the concession is legally correct. Thus, we address the question of the sufficiency of evidence about the living room confrontation first, which question concentrates on the legal question of whether the finder of fact may treat a threat to shoot as a threat to kill for purposes of the crime of felony harassment.

We outline standard principles for evidence challenges. We deem evidence sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In claiming insufficient evidence, the accused admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Homan*, 181 Wn.2d 102,

105-06, 330 P.3d 182 (2014).  We defer to the jury on matters of conflicting testimony,

credibility of witnesses, and the persuasiveness of the evidence.  *State v. Thomas*,

150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

RCW 9A.46.020 establishes the crime of harassment.  The three felony

harassment charges occurred between January 1, 2021 and February 28, 2021.  The

statute in effect at that time declares, in relevant part:

> (1)  A person is guilty of harassment if:
> (a)  Without lawful authority, the person knowingly threatens:
> (i)  To cause bodily injury immediately or in the future to the person threatened or to any other person; or
> . . . .
> (iv)  Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
> (b)  The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.  "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
> (2)(a)  Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.

Laws of 2011, ch. 64, § 1.  The State charged David Salmeron with a felony based on a

threat to kill, so we review subsection (b) of RCW 9A.46.020(2):

> (b)  A person who harasses another is guilty of a class C felony if any of the following apply: . . . (ii) the person harasses another person under subsection (1)(a)(i) of this section by *threatening to kill* the person threatened or any other person.

To prove the crime of felony harassment, the State must establish beyond a reasonable

doubt that the defendant threatened to kill the victim and the defendant's words or

12

conduct placed the victim in reasonable fear that the threat would be carried out.  *State v. C.G.*, 150 Wn.2d 604, 612, 80 P.3d 594 (2003).  David Salmeron challenges the first of these two elements.

RCW 9A.46.020(2) does not require a "literal threat" to kill interpretation.  *State v. Kilburn*, 151 Wn.2d 36, 59-60, 84 P.3d 1215 (2004); *State v. C.G.*, 150 Wn.2d 604, 610 (2003).  In other words, the accused need not voice the word "kill."  *State v. Lucas-Vicente*, 22 Wn. App. 2d 212, 224-25, 510 P.3d 1006 (2022).  An interpretation requiring the accused to utter the word "kill" would lead to absurd results.  *State v. C.G.*, 150 Wn.2d 604, 610-11 (2003).  Instead, the nature of a threat depends on all the facts and circumstances.  *State v. C.G.*, 150 Wn.2d 604, 610-11 (2003).

In *State v. Kilburn*, 151 Wn.2d 36 (2004), the majority of the Washington Supreme Court held that a diary entry of an accused, reading that he was going to "shoot up" the school, was not a true threat.  Four dissenting judges would have upheld the conviction because the threat constituted a true threat and implied a threat to kill.  In *State v. C.G.*, 150 Wn.2d 604 (2003), the Washington Supreme Court reversed a conviction because the target of the threat did not believe she was in jeopardy of being killed, not because of the words uttered by the accused.

In *State v. Lucas-Vicente*, 22 Wn. App. 2d 212 (2022), this court held that the State's attorney did not engage in misconduct in a prosecution for felony harassment.  Geronimo Lucas-Vicente bit his victim on her lip and neck, punched her in the face,

choked her with his hands, and strangled her with a belt. Lucas-Vicente told the victim

"to hurry up and die." Lucas-Vicente did not directly threaten to kill the victim.

Nevertheless, during closing argument, the State's attorney intoned that Lucas-Vicente

"could have very well killed" the victim. On appeal, Lucas-Vicente maintained that the

prosecutor's statement inflamed the jury by painting him as a potential murderer. The

court reasoned that the prosecutor's argument properly related to the charge of felony

harassment.

David Salmeron menacingly threatened to shoot Victoria if she called law

enforcement. Salmeron made the threat after other acts of hostility led to a protection

order and at the time he violated the protection order. When viewing the evidence in the

light most favorable to the prosecution, a rational jury could have found the essential

elements of felony harassment pled in count II beyond a reasonable doubt even if

adopting the living room incident as the subject of the conviction. Because we conclude

that sufficient evidence supported the felony harassment guilty verdict, even if the jury

relied on the living room altercation, we do not address the adequacy of the charging

information or the jury instructions.

## Hybrid Sentence

David Salmeron received an exceptional sentence of 68 months, consisting of 60

months for count I and 48 months for count II, with 40 months of count II running

concurrently with count I and the remaining 8 months running consecutively. David

Salmeron challenges this sentence on appeal because the sentencing court split the

sentence for count II, with a portion being concurrent with count I and a portion being

consecutive to count I. He argues that the sentencing court violated RCW

9.94A.589(1)(a) by imposing this mixture of a sentence. He does not contend that the

court could not impose an exceptional sentence. The State responds that the sentencing

court acted within its prerogative when ordering a partial consecutive sentence and a

partial concurrent sentence for counts I and II. We agree with the State.

The law labels a sentence part consecutive and part concurrent as a

hybrid sentence. David Salmeron's challenge to his sentence implicates not only

RCW 9.94A.589, but also RCW 9.94A.535, both portions of the byzantine sentencing

reform act. The latter statute states in relevant part:

> The court may impose a sentence outside the standard sentence
> range for an offense if it finds, considering the purpose of this chapter, that
> there are substantial and compelling reasons justifying an exceptional
> sentence. Facts supporting aggravated sentences, other than the fact of a
> prior conviction, shall be determined pursuant to the provisions of
> RCW 9.94A.537.
> . . . .
> If the sentencing court finds that an exceptional sentence outside the
> standard sentence range should be imposed, the sentence is subject to
> review only as provided for in RCW 9.94A.585(4).
> *A departure from the standards in RCW 9.94A.589(1) and (2)*
> *governing whether sentences are to be served consecutively or concurrently*
> *is an exceptional sentence* subject to the limitations in this section, and may
> be appealed by the offender or the state as set forth in RCW 9.94A.585(2)
> through (6).
> . . . .

(3) Aggravating Circumstances—Considered by a Jury—Imposed by the Court

Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. Such facts should be determined by procedures specified in RCW 9.94A.537.

. . . .

(h) The current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and one or more of the following was present:

(i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time;

*(ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years.*

(Emphasis added.) Pertinent parts of RCW 9.94A.589 declare:

(1)(a) . . . [W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score . . . . Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. . . .

. . . .

[(2)](b) Whenever a second or later felony conviction results in consecutive community custody with conditions not currently in effect, under the prior sentence or sentences of community custody, the court may require that the conditions of community custody contained in the second or later sentence begin during the immediate term of community custody and continue throughout the duration of the consecutive term of community custody.

(3) . . . [W]henever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, *the sentence shall run concurrently* with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced *unless the court pronouncing the current sentence expressly orders that the confinement*

16

> *terms be served consecutively to each other.* Even if the court orders the confinement terms to run consecutively to each other, *the terms of community custody shall run concurrently to each other, unless the court expressly orders the community custody terms to run consecutively to each other*.

(Emphasis added.) Neither RCW 9.94A.535 nor 9.94A.589(1)(a) requires that an exceptional sentence be entirely concurrent or entirely consecutive.

The parties cite four cases: *State v. Jacobs*, 154 Wn.2d 596, 115 P.3d 281 (2005), *In re Personal Restraint of Green*, 170 Wn. App. 328, 283 P.3d 606 (2012), *State v. Smith*, 142 Wn. App. 122, 173 P.3d 973 (2007), and *State v. Grayson*, 130 Wn. App. 782, 125 P.3d 169 (2005). We discuss the cases in chronological order.

In *State v. Jacobs*, 154 Wn.2d 596, 115 P.3d 281 (2005), a jury convicted James Jacobs and Kathy Austin-Bocanegra of manufacturing a controlled substance. The jury also returned two special verdicts finding that they committed the crime in the presence of an underage person and that they manufactured a controlled substance within 1,000 feet of a school bus stop. The sentencing judge imposed two 24-month sentence enhancements based on those findings and applied them consecutively. On appeal, Jacobs and Austin-Bocanegra argued that the forerunner to RCW 9.94A.533(6) only intended one sentencing enhancement or, if both applied, the court must run the enhancements concurrently. The Supreme Court deemed the statute ambiguous and applied the rule of lenity. The court directed the sentencing court to apply the two enhancements concurrently.

*State v. Jacobs* posed the question of whether the sentencing court could order consecutive sentences at all, not whether the court may command a hybrid sentence. Unlike RCW 9.94A.533(6) at issue in *State v. Jacobs*, RCW 9.94A.589(1)(a), the statute controlling David Salmeron's sentencing, possesses no ambiguity. The statute expressly allows for consecutive sentences on a finding of aggravating circumstances.

In *State v. Smith*, 142 Wn. App. 122 (2007), Beau Smith received a 43-month non-drug offender sentencing alternative (DOSA) sentence for a 2005 conviction and a DOSA sentence for 2006 convictions, resulting in 25 months of confinement and 25 months of community custody for one count, and 9 months of confinement and 9 months of community custody for another. The sentencing court ordered the confinement portions of the DOSA sentences to run concurrently with the non-DOSA sentence, but the community custody portions were to be served consecutively. On appeal, Smith argued this created a hybrid sentence, in violation of RCW 9.94A.589(3). This court reversed while holding that the statute did not permit a partially concurrent and partially consecutive hybrid sentence.

This court affirmed this principle in *State v. Grayson*, 130 Wn. App. 782, 125 P.3d 169 (2005), wherein the sentencing court imposed on John Grayson a 138-month sentence for one cause number and, one month later, a 144-month sentence for a different cause number. Under RCW 9.94A.589(3), the court could have expressly ordered the second sentence to run consecutively. After finding a fully consecutive sentence too

harsh and a fully concurrent sentence too lenient, the court imposed a hybrid sentence with 12 months running consecutively and the rest concurrently. In reversing the trial court, this court emphasized that no language in RCW 9.94A.589(3) suggests that the court may divide the sentence in two parts, one part to run concurrently with the other sentences and the other consecutively.

In contrast, in *In re Personal Restraint of Green*, 170 Wn. App. 328, 336, 283 P.3d 606 (2012), this court addressed whether RCW 9.94A.589(2)(a) permits hybrid sentences. The statute mandates that, when a defendant commits another felony while already under sentence for a felony conviction, the new sentence must run consecutively to all earlier sentences. The trial court had imposed an exceptional sentence, with part of it running concurrently with, and part running consecutively to, the prior sentence. Aaron Green argued, based on *State v. Smith*, that the trial court erred by imposing an unlawful hybrid sentence. This court discovered no overarching rule against hybrid sentences and concluded that case law developed under RCW 9.94A.589(3) has no applicability to exceptional sentences imposed under RCW 9.94A.589(2). RCW 9.94A.589(1)(a), the portion of the statute relevant to David Salmeron's sentencing, is likewise limited only by the provisions of RCW 9.94A.535.

Based on Washington case law, hybrid sentences are only prohibited when RCW 9.94A.589 requires a strict choice between concurrent and consecutive terms of confinement, as outlined in subsection (3). Otherwise, RCW 9.94A.589(1) and

19

9.94A.535 grant courts the flexibility to tailor the consecutive or concurrent nature of an exceptional sentence to fit the specific circumstances of a case. *State v. Smith*, 142 Wn. App. 122, 126, 173 P.3d 973 (2007). David Salmeron's amalgamated 68-month sentence was a lawful exceptional sentence.

To repeat, the jury found aggravating circumstances justifying an exceptional sentence. RCW 9.94A.585(4) addresses our review of the imposition of an exceptional sentence. The statutory subsection reads:

> To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

David Salmeron does not contend that the record fails to support the exceptional sentence and does not argue that the sentencing court imposed a clearly excessive sentence.

### Scrivener's Errors

David Salmeron assigns error to the firearm registration requirement and length of community custody imposed in his judgment and sentence. The State concedes the two sections of the judgment and sentence are mistakes due to a scrivener's error. Salmeron did not commit a felony firearm offense. The trial court imposed a sentence of 60 months' confinement for fourth degree assault (count I) and 12 months of community custody on the sentence for felony harassment (count II). Although the sentence for the

felony harassment is only 48 months, Salmeron will remain in jail for 60 months, because of the assault conviction, the maximum sentence for the felony harassment. Therefore, Salmeron need not serve any community custody.

David Salmeron also contends paragraph 4.1 to be a scrivener's error. The actual number of months of total confinement ordered was 68 months but paragraphs 2.4 and 4.1 of the judgment and sentence conflict. Paragraph 2.4 imposes an exceptional sentence, requiring that David Salmeron serve 8 of the 48 months for count II consecutively to the 60-month sentence for count I. However, paragraph 4.1 indicates that counts I and II are to be served "concurrently except for *12 months of count [II]*, which *shall be served consecutively*." CP at 194 (emphasis added). The State declares this is not an error but makes no attempt to resolve the inconsistency. We agree with Salmeron.

"A 'scrivener's error' is a clerical mistake that, when amended, would correctly convey the trial court's intention based on other evidence." *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022). Considering that the actual number of months of total confinement ordered under paragraph 4.1 is consistent with the "hybrid" sentence imposed, the insertion of the number 12 instead of 8 is likely a clerical mistake.

Victim Penalty Assessment

David Salmeron, indigent at the time of sentencing, asks this court to remove the $500 crime victim's compensation assessment from his judgment and sentence based on

21

recent amendments to the Sentencing Reform Act of 1981, chapter 9.94A RCW.

RCW 7.68.035 was amended in 2023 to add subsection (4), which provides: "The court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." Laws of 2023, ch. 449, § 1. Upon a defendant's motion, the court must waive any crime victim penalty assessment imposed before the amendment's effective date if the defendant lacks the ability to pay. Because Salmeron's case is pending on direct appeal and his conviction is not yet final, he is entitled to relief. *See State v. Jefferson*, 192 Wn.2d 225, 246, 429 P.3d 467 (2018); *State v. Pillatos*, 159 Wn.2d 459, 470, 150 P.3d 1130 (2007).

Statement of Additional Grounds

In his statement of additional grounds, David Salmeron challenges the following: (1) the imposition of community custody for count III, (2) the trial court's failure to specify the place of confinement for the misdemeanor offense, (3) the calculation of his offender score, (4) the charging documents for felony harassment, and (5) utilization of the same evidence to convict him of both felony and misdemeanor offenses. We reject all five challenges.

(1) The sentencing court imposed community custody for count II, not count III. We have already directed removal from the judgment and sentence any community custody.

(2) The sentencing court correctly committed David Salmeron to the Department of Corrections given his 68-month sentence. Under RCW 9.94A.190(1), any sentence that includes terms of confinement totaling more than one year must be served in a state-operated facility or institution. Salmeron has no entitlement to serve his sentence for the misdemeanor offense in a local jail rather than in prison.

(3) The trial court did not err in assigning eight points to David Salmeron's offender score. Nonviolent offenses with a domestic violence appellation are scored under RCW 9.94A.525(21). The number of prior domestic violence felony convictions is multiplied by two. Salmeron's adult criminal history includes assault in the third degree (DV) and three separate convictions for violation of a no contact order (DV). Additionally, current domestic violence felony convictions are also multiplied by two, and Salmeron's other conviction includes felony harassment (DV). 2 times 4 equals 8.

(4) The failure to request a bill of particulars precludes David Salmeron from challenging the information on appeal. Salmeron does not argue that each statutory element of felony harassment was not included in the charging documents. "In that event, a defendant is not entitled to challenge the information on appeal if he or she has failed to timely request a bill of particulars." *State v. Noltie*, 116 Wn.2d 831, 843-44, 809 P.2d 190 (1991).

Furthermore, Salmeron fails to demonstrate any prejudice resulting from a potential violation of his constitutional right "'to be informed of the nature and cause of

the accusation against him' to enable him to prepare a defense." *State v. Turner*, 167 Wn. App. 871, 879, 275 P.3d 356 (2012) (quoting *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985)). Salmeron does not claim he was surprised by the State's evidence or that he lacked notice of what the State intended to prove. According to CrR 2.1(a)(1), "[e]rror in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." Thus, Salmeron is not entitled to relief even if the information was defective due to a lack of specificity. *State v. Nonog*, 145 Wn. App. 802, 806, 187 P.3d 335 (2008), *aff'd*, 169 Wn.2d 220, 237 P.3d 250 (2010).

(5) David Salmeron fails to provide a basis for reversing the conviction due to the use of the same evidence for different offenses that, as he states, could be punished in either district or superior court. While a SAG does not require reference to the record or citations to authority, the court will not review an alleged error if the statement does not clearly convey the nature and occurrence of the error. RAP 10.10(c); *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011).

## CONCLUSIONS

We affirm David Salmeron's convictions. We remand to the superior court to strike the firearm registration requirement, the imposition of community custody, and the victim penalty assessment from Salmeron's judgment and sentence.

24

No. 39309-7-III
*State v. Salmeron*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.                Pennell, J.

25